Mokpiiy, J.
delivered the opinion of the court.
This action is brought to annul and set aside a sale alleged to have been extorted from plaintiff by threats and violence on the part of defendant, and to claim $30,000 in damages. The petition charges, that on the 8th of April, 1835, plaintiff became a partner in equal right with the defendant in the ownership and cultivation of a tract of land near the mouth of Red River, con *177 taining about nineteen hundred acres, together with eleven slaves and all the improvements, stock, farming utensils, &c., appertaining to it; one undivided half of all which property was conveyed to the petitioner by defendant, by a deed executed before John B. Dawson, the parish judge of West Feliciana. That on the same day the defendant also sold to plaintiff an undivided half in the property of certain other slaves and two horses, then employed on and attached to the plantation. That these sales were made in pursuance of a contract of partnership antecedently agreed on, and accordingly defendant and plaintiff in the character of partners, jointly and alternately in the absence of one another, managed and conducted the plantation and slaves up to the 24th of December, 1835, when the defendant without any pretext of bad [289] management or provocation on the part of plaintiff, but solely with a view to wrest from Mm by force and violence his just rights in and to the said property, armed with deadly weapons, dirks and pistols, and in company with others, particularly with one James Bass, did seek, pursue and find plaintiff at the house of one Hamilton Orr, in the parish of Pointe Coupée; and then and there in a rude, violent and menacing manner demanded of Mm a rescission of the sales of the property held in partnership between them, to which demand the plaintiff promptly refused to accede. That thereupon the said James F. Mickie supported by his companions drew his pistol and with the same inflicted several blows on the head of plaintiff, declaring that in the event of further resistance or refusal to comply with his demand, he would shoot him; that plaintiff believing his life to be in danger from the threats and acts of the said Mickie and his party, suffered himself to be taken without resistance across the Mississippi, into the parish of West Feliciana, in the direction and course of the plantation of one Francis Bouth; that the party having plaintiff in duress met with the said Bouth and one John Harmanson, who from their remarks and manner at once betrayed a perfect understanding of, the treatment meditated against the plaintiff; that he was then handed over to the said Bouth and Harmanson who conveyed him to the house of one Peggy Philips, declaring that their object was to force Mm to surrender all his interest in the partnership to defendant; and that if he would not do it voluntarily he should be lynched into it; that defendant and his party finding that persuasion was of no avail, took the petitioner at some distance from the house and there told him in a tone and manner indicative of force and violence, not to be misunderstood, that they were then prepared to deal with him as he might refuse or comply with the proposition made to him for tbo last time to surrender to defendant all his interest in the partnership, property for $3000; that the plaintiff finding himself in the power of an [290] armed party and conscious that resistance was useless, assented to every thing proposed; that he was then conducted to the dwelling house of said Bouthat a late hour of the night and confined under the guard of John Harmanson in a separate apartment until a deed of conveyance for his interest in one half of the property was prepared, when he was taken into the presence of Judge Dawson for the purpose of signing the said deed, which from fear and’ terror the petitioner signed in the night of the 24th December, 1835.
The petition further charges that plaintiff’s interest as partner in and to' *178 said plantation and slaves as also one half of the crop was fully worth $30,000 on the 24th of December, 1835; and that said interest was thus forcibly, violently and knavishly wrung and extorted from him for the inadequate sum of $3000, which from fear and terror he was constrained to receive; but that since he has made a tender to the defendant of $8000, and demanded the restitution of his rights as partner to the said property, or the payment of the said sum of $30,000, with either of which demands defendant has refused to comply.
The answer admits the reconveyance to defendant of plaintiff’s interest in the partnership property for $3000, paid to him in defendant’s draft on the house of Shipp, Ferriday & Oo., at Natchez, the proceeds of which the plaintiff received on the Sth of January, 1836: it avers that said sum was more than equal to the value of such interest, as plaintiff never paid one cent on account of the property sold to him on the 8th of April, 1835, and never advanced any money towards supporting the expenses of-the plantation and negroes; the answer further avers that defendant’s association with plaintiff had become disagreeable and insupportable to the former, in consequence of a report unfavorable to the character and conduct of the plaintiff, which report he took no pains to investigate although it had acquired currency in [291] their neighborhood; that by reason of this, respondent solicited a settlement of their affairs, which resulted in a reconveyance of the property sold to him by defendant; the answer denies that there, was any force or threats used to obtain such ’ reconveyance, or that any tender in law or in fact was ever made to defendant of the $3000, but that on the contrary plaintiff received and kept said sum, thereby approving and satisfying the contract and depriving himself of the right to sue for its rescission.
On these pleadings the parties went to trial before a jury, who gave a verdict rescinding the sale of the 24th of December, 1835, and decreeing defendants to pay $8184, for rents and revenues arising from the plantation, and the additional sum of $6000 for further damages. After a strenuous but unsuccessful effort to obtain a new trial, the defendants appealed.
Before considering the merits of this case, it is proper to notice an error •■assigned by the defendants as apparent on the face of the record. It is, that • although the death of James F. Mickie was suggested of record below, the • cause was afterwards tried without citation to, or any answer filed by the heirs of defendant, and that therefore the judgment was illegally rendered •■against them; they being in no manner parties to this suit. 'When the record was brought up last year, a cwiiorari was prayed for by the appellee, on the .ground that an answer filed in the name of the representatives of the defendant, who had died after issue joined, was not to be found in the record, and was supposed to have been omitted in it by mistake. A certified copy of his answer has been filed in this court on the 8th of February last, from which it appears that David O. Mickie and N. S. Nichols, styling themselves sole • surviving heirs of the late James F. Mickie, appeared below to defend the suit; leave of the court having first been obtained. They denied all the alle.gations of the petition,-adopted the answer of the original defendant as their .own, &c. This .answer is signed by Johnson, Bullard & Thomas, as attorneys; *179 and the clerk certifies it to he a true copy of the original answer of the [292] heirs of James F. Mickie, as found among the papers of this suit; and moreover that it had been copied by him with the other documents of the case into the record sent up to this court, but was afterwards taken out on the suggestion of James Turner, Esq., one of the counsel of the appellants, he having discovered that the paper had not been marked filed. The appellee’s counsel has made his affidavit that this answer was among the papers of the case before it was assigned, and was used on the trial below. This statement has not been directly contradicted, but we are pressed on the authority of the case of Monroe v. McMicken, in 8 Mart. N. S. 514, to consider the heirs of James E. Mickie as having never been parties to the suit, because the clerk has omitted to indorse their answer as filed,. This we ax-e by no means prepared to do; the case alluded to is evidently different from the present. Thex-e the objection came from the opposite party who was not bound to notice the defendant’s answer until it was filed; and who complained that he had not had sufficient time to examine it before the jury was sworn. This case exhibits the strange spectacle of the appellants’ counsel urging us to disregard their own answer after the case has been fully tried on its merits below, and when it is not pretended that the authority of the coxxnsel who signed it is disavowed by the parties; other gentlemen, it is true, have been engaged and have appeared in this court, but this does not, in our opinion, alter the case; the record, moreover-, shows that one of the appellants’ counsel here, James Turner, made a motion for a new trial below, in conjunction with Bullard & Thomas, two of the attorneys who signed the answer of the heirs, and among the numex-ous grounds urged by them in support of their motion, we do not find that so much insisted upon in this court; we cannot then but come to the conclusion that the heirs had made themselves parties to the suit, and cannot now be permitted to take any advantage of the clerk’s omission to indorse their answer.
On the merits, plaintiff has substantially made out his case as set [293] forth in his petition. A stronger one can hardly be imagined, and we cannot refrain from expressing our abhorrence of the lawless and ruffianlike conduct of the pax-ticipators in this scene of violence and bloodshed. The circumstance of plaintiff having signed the contract in the presence of Judge Dawson, without any positive resistance, does not prove his consent to have been, voluntary; it might well be imagined that he was yet under the influence of fear and terror, and that he dreaded the treatment which might he reserved for him in case he was refractory to the will of those in whose power he was. The expression, “ I suppose I must sign the paper,” used by the plaintiff before signing, showed his reluctance to do it, but they wex-e then not noticed or attended to by the magistrate who had not the least intimation of what had passed, and who had stopped accidentally at Boutlx’s house that evening in a state of extreme indisposition. It is said that admitting the contract to have been violently extorted from plaintiff in the first instance, he subsequently approved and confirmed it by receiving voluntarily the money after the violence complained of had ceased. We believe the true doctrine on this subject to be that the acts of the party from which a ratification is *180 sought to he deduced, must evince clearly and unequivocally his intention to ratify; if his acts can he in any manner accounted for, without a ratification of the contract necessarily resulting from them, they show no approval or confirmation on his part. 8 Toullier, p. 705, Nos. 506, 507; Story’s Equity Jurisprudence, sect. 307 ; 13 La. Eep. 172. From the terms of art. 1849, of the Louisiana' Code, it would seem that our law, in a case like the present, recognizes no tacit approval except that which results from the fact of suffering the time to elapse within which the rescissory action can he exercised; such appears also to be the doctrine of Pothier. Traité' des Obligations, p. 20, No. 21. But be this as it may, and applying to this case the ordinary [294] rules of tacit ratification, we cannot see in all the acts of plaintiff taken together, any intention'to confirm the sale extorted from him. It is true, that on his arrival at Natchez, he received a hundred dollars from the drawees of the draft; this his necessities might have compelled him to ask of them, driven as he 'was from his home, and reduced to a state of destitution. As to the balance of the sum he afterwards received, it might well be, as he avers, that having received in payment a draft payable ten days after sight, he believed it his duty to use due diligence to collect it, lest in case he shpuld fail in the present suit, he might lose both his property and the paltry sum given for it; but shortly after this, we find the plaintiff depositing the money in the hands of a broker in Natchez, and advising the defendant of the deposit; and of his intention to bring the present action. This course of conduct does not, to our mind, show any intention of confirming the sale..
The just indignation of the jury who tried this cause' betrayed them -into errors which it is our duty to correct. After allowing $8140 for the fruits and revenues arising from the plantation, they gave $6000 for further damages. The petition does not purport to claim either the fruits and revenues of the land or any damages for the personal wrongs sustained by the plaintiff. After setting forth the threats and acts of violence used to compel plaintiff to surrender his interest in the partnership, the petition avers that this interest with one half of the crop of that year were at that time worth $80,000, and that before bringing the present action, plaintiff had demanded of defendant either the restitution of all his rights as partner, or the payment of $30,000 in lieu thereof; thus showing clearly that the damages of $30,000 mentioned in the prayer of it were intended for the wrong and injury done to plaintiff by depriving him of his interest in the partnership, and the whole evidence goes to 'show the value of the slaves, of the land, and of the improvements; but this sum the plaintiff could not demand together with [295] the restitution of the property itself. He has lost none of his rights as a partner under the act of the 8th of April, 1835; and can call upon defendants to account for the fruits and revenues of the land, and for a settlement of the partnership; but he cannot claim as a partner any special sum, because a liquidation of the concern can alone show the profits to be divided if any there be. Mead v. Curry, 8 Martin, N. S. 281. As to the personal wrongs suffered by the plaintiff, it does not appear from the pleadings or evidence that he intended to seek redress for them in the present action; and *181 the record shows that shortly after the inception of this suit, criminal prosecutions were instituted against Mickie, Bass and Harmanson, for assault and battery and false imprisonment. This view of the case makes it unnecessary to examine whether vindictive damages can or ought to be awarded against the heirs of the wrongdoer.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed, except in that part of it decreeing defendants to pay $8140 for fruits and $6000 for damages, which is hereby reversed; the plaintiff and appellee paying the costs of this appeal. ■