Plaintiff instituted this suit seeking to recover the sum of $254.40, with 8% interest thereon from August 1, 1941, until paid, and 25% additional on both principal and interest unpaid as attorneys' fees, with recognition of vendor's lien and privilege and chattel mortgage on a Norge refrigerator, against Asia Rester and his wife, in solido, and in the alternative, then only as against defendant Asia Rester.
Plaintiff avers that on June 24, 1941, he sold to Mrs. Asia Rester, the wife of defendant Asia Rester, during the existence of the marriage and for the use and benefit of the community, a certain Norge refrigerator, for the price and sum of $278.35, of which Mrs. Rester paid in cash the sum of $23.95, and for the balance executed her note payable in 30 monthly installments of $8.48, each, the first installment being payable August 1, 1941; *Page 89 
that to secure the said note the said purchaser executed a chattel mortgage before a notary public wherein plaintiff retained a vendor's lien and privilege on the property sold, and that the note was paraphed "Ne Varietur" to identify it with the said chattel mortgage, the chattel mortgage having been duly recorded in the Parish of East Baton Rouge wherein defendants resided. Plaintiff further averred that the purchase, the execution of the note, and the granting of the chattel mortgage were all done in the presence of the defendant husband or that he knew of the same and consented thereto and had ratified the actions of his wife.
Defendants filed an exception of vagueness. In response to the exception, plaintiff filed a supplemental petition averring that on June 21, 1941, defendants visited his place of business and selected the refrigerator they desired, and that Mrs. Rester signed the note and chattel mortgage in the presence of Mr. Rester and giving in detail what had taken place on June 21, 1941, and subsequently thereto, on June 24, 1941; he further avers that he heard nothing further from the defendants until after a reminder from him of the first installment due on August 1, 1941, when Mrs. Rester visited his place of business and asked permission to return the refrigerator giving as a reason that Mr. Rester would not pay for the same.
Defendants filed separate answers. Mr. Rester, in answer to the original petition, admitted his residence and not having paid anything to plaintiff, and categorically denied every other allegation. In answer to the supplemental petition, he admitted that he accompanied his wife to plaintiff's store on June 21, 1941, but categorically denied all of the essential allegations thereof. In further answer, he avers that if his wife did make the down payment of $23.95, the same was done without his knowledge and consent, and with community funds, and therefore, in reconvention, judgment should be rendered in his favor and against plaintiff for this amount. Mrs. Rester, in answer to the original petition, admitted her residence and her failure to pay anything to plaintiff after the down payment, and categorically denied each and every other allegation of the said petition. In answer to the supplemental petition, she set out her version of the visit of her husband and herself to plaintiff's store for the purpose of inspecting electric refrigerators, and the choosing of one of the refrigerators of her liking; upon being informed of the price, the refusal of her husband's consent for its purchase, the manner and way she was led to sign the order blank, the note and chattel mortgage in blank, her return on June 24th and the making of the deposit, and the delivery of the refrigerator against her orders. She then specifically and categorically denied each and every allegation.
Upon these issues, the case was tried, resulting in a judgment in favor of the plaintiff and against Mr. Rester in the sum as prayed for, with recognition of the vendor's lien and privilege on the refrigerator but disallowing the recognition of the chattel mortgage and dismissing the suit as against Mrs. Rester. Mr. Rester has appealed. Plaintiff has failed to appeal from that part of the judgment dismissing his suit against Mrs. Rester, and disallowing his demand for the recognition of the chattel mortgage. He has failed to answer the appeal taken by Mr. Rester. It follows, therefore, that the only question before this court is the correctness of the judgment rendered against Mr. Rester.
The lower court correctly states the circumstances under which a husband, as head and master of the community, can be held liable for a debt contracted by the wife:
"(1) Where the purchase made by the wife was necessary for her convenience and where the husband fails or refuses to supply the same. Article 120, R.C.C.
"(2) Although the thing purchased by the wife is not a necessity in the sense of Article 120 of the Civil Code, the husband nevertheless can be held liable if he knew of the purchase and did nothing at the time the same was made to repudiate the debt and permitted the article purchased to be used for the benefit of the community. In such instance his silence and inaction are circumstances showing consent and ratification. Articles 1817 and 2402, R.C.C.
"The rule is however that where it is sought to hold the husband for a debt contracted by the wife, other than for necessities, the burden of proving ratification or of consent to the purchase by the husband is upon the plaintiff. See Lacaze v. Kelse, La.App., 185 So. 676; Hamilton *Page 90 
v. Hodges, 30 La.Ann. 1290; Copeland v. Mickie, 17 La. 286."
In the present case, the plaintiff contends that the husband consented to and has ratified the purchase made by his wife; the defendant contends otherwise. This issue of fact is the only issue before this court, as it is not contended that Civil Code, Art. 120 is applicable to the case, and clearly it is not.
The transaction which gives rise to this suit begins on June 21, 1941. It is admitted that on that day the two defendants, who live some eight miles east of the City of Baton Rouge and operate a small dairy, visited plaintiff's store in the City of Baton Rouge apparently for the purpose of having Mrs. Rester look over electric ice boxes, and possibly purchase one. It appears that Mrs. Rester found a box of her liking and asked the price thereof, but from there on the testimony given by the defendants on the one hand and by Mr. Roux, plaintiff's sale manager, and Mr. Wilkinson on the other hand, is conflicting. The testimony of the Resters is to the effect that after Mrs. Rester had picked out a box of her choice, presumably in the company of her husband, they were taken by the salesman Wilkinson to the front of the store where there is a little desk with a chair on one side for the salesman and another on the other side for the customer, which were occupied by Mr. Roux and Mr. Rester, and that Mrs. Rester and Mr. Wilkinson stood near by next to a range or stove. The price and terms were then explained to Mr. Rester, either by Mr. Roux or Mr. Wilkinson, and the order, together with the note and chattel mortgage were presented to Mr. Rester; and according to Mrs. Rester, her husband thereupon got up and said: "Oh, no, I could not do that", and she remarked: "Let me", whereupon he answered, "No, I wouldn't", and immediately left the store. She states that thereafter Roux and Wilkinson persuaded her to sign several blank papers; (which afterwards proved to be the order, the note, chattel mortgage and credit information) upon the representation that the signing of these papers was for the purpose of holding the box until she could obtain her husband's consent to purchase the same, and for the further purpose of affording time to ascertain her husband's credit standing. Mr. Rester states emphatically that when he was informed of the price of the box he told Wilkinson and Roux that he was unable to buy it and refused to sign the papers and advised his wife to do likewise. Mrs. Rester testified that three days later, on June 24, 1941, she returned to the store and made a deposit of $23.95 on the box, informing the salesman, however, that she was still acting without her husband's consent or authorization, and giving instructions to withhold delivery until further orders. She states that she again visited plaintiff's store on June 28th, when she again gave instructions not to deliver the box, for the reason that she still was without her husband's consent; but that when she arrived at home that evening she found that the box had been delivered and installed, and she, at that time, requested the employees of plaintiff who had brought the box, to return it, but that they refused to do so. She states further that her husband was absent when the box was delivered and that he never consented to keeping the box, and that within two weeks it was disconnected and never used thereafter, and that within that time she visited plaintiff's store and conveyed the information that her husband did not want to keep the box and requested that it be taken back. But this request, as well as subsequent requests were made to no avail. Mr. Rester states that the box was delivered during his absence; that he refused to keep it and refused to pay for it and notified plaintiff to that effect; that he had the box disconnected as soon as he could, and made repeated demands upon plaintiff to go get it, and finally plaintiff having failed to come for the box, he borrowed a neighbor's truck and returned the box himself.
Mr. Wilkinson testified that he waited on the Resters and that they both had selected the box and bought it. He states that he informed them both of the cost price and the terms and that Mr. Rester neither agreed or disagreed to the terms of purchase; that he accompanied the Resters to the desk at the front of the store, where he invited Mr. Rester to sit down, and that he did not take the other chair ordinarily used by the salesman "because then Mrs. Rester would have been left standing." He states that Mr. Roux was present at that time. He testifies that he does not remember that Mr. Rester was offered the papers and stated that he would not sign them because he could not afford the box, but with reference to signing *Page 91 
papers, he states: "Mr. Rester was sitting in a chair and Mrs. Rester and I were standing at the end of the desk, and the order and note were signed on top of a range at the end of the desk." Upon being questioned as to why he did not get the husband to sign the papers, he states: "It is customary for a man and his wife to come in to buy some item and either one of them will sign it. If they are both right there and it is agreeable, they both sometime sign, but we never have made any definite rule to have both of them sign it." As stated before, he does not remember whether Mr. Rester refused to sign the papers, nor does he remember whether or not he advised his wife not to sign. He denies that Mr. Rester left before Mrs. Rester and implies that he was present when she signed the papers. He admits that Mrs. Rester did not make any down payment at the time the papers were signed, and did not give any order to send the box to her house and that she was to come in later to give instructions as to what day to deliver the refrigerator, and that on the Tuesday following, June 24th, she came and made the down payment. He states further that about the time the first payment was due (August 1st) Mrs. Rester came into the store and seemed very much upset, and said that her husband was going to quit her, and in effect that he was very much displeased because her name had appeared in the "Legal News" (a daily publication of legal transactions in Baton Rouge), and that she wanted plaintiff's store to take back the refrigerator.
Mr. Roux' testimony conflicts with the testimony of Wilkinson. He states that Mr. Rester did not accompany Wilkinson and Mrs. Rester in the inspection of refrigerators, but sat at the salesmen's desk with him and that when Wilkinson and Mrs. Rester returned, they stood by the desk near the range and that Wilkinson thereupon got out the necessary papers and that since there was but one box of the kind chosen in stock, he informed Mrs. Rester she could sign and that "she could consummate the deal and pay the down payment later." He states, in effect, that Mr. Wilkinson discussed the sale with both Mr. and Mrs. Rester and that Mrs. Rester signed the papers in the presence of Mr. Rester, Wilkinson and himself. He testifies further that Mrs. Rester made the down payment on the following Tuesday, June 24th, and he made a delivery order slip on "6-28-31", on which day, the Saturday following the Saturday on which the purchase was made, delivery was made. He testifies that the first time that he was informed that Mr. Rester did not want the box was some two or three days after the installment became due, (first installment due August 1st.) when Mrs. Rester came into the store and stated that her husband was displeased because he saw or heard her name was in the Legal News and that she desired to have the box taken back; that later she returned two or three times to make the same request and that her husband also came in later on and mentioned something about it. He testifies, as stated before, that Mr. Rester was there when the order and papers were signed by Mrs. Rester, and that while he cannot swear to it, he believes Mr. Rester was there when Mrs. Rester gave instructions to deliver the box. As to the delivery instructions, he claims that they were given by Mrs. Rester, as shown on the delivery slip, which has not been introduced, but which, according to his testimony, was dated "6-28-41", the very day the delivery was made. He adds that this delivery ticket was prepared while the contract was being consummated and that the contract, with instructions, were given to him while Mr. Rester was present.
While Mr. Roux and Mr. Wilkinson both insist that the deal for the electric box was consummated with the knowledge and consent of Mr. Rester, yet some of their statements tend to corroborate the testimony of defendants to the contrary. They both admit that Mrs. Rester did not make the down payment at the time the papers were signed, and both admit that three days later, when the down payment was made, her husband was not present, and there is no showing that she was incapable of making the down payment in the first instance. That certainly indicates that she was trying to obtain her husband's consent before going further with the deal. Both of plaintiff's witnesses also admit that Mrs. Rester called at the store to request that the box be taken back, as testified by her. True, they state that her visit was two or three days after August 1st, the due date of the first installment, but since they state that her visit was caused by the fact that her name had appeared in the Legal News, and since it is shown that the chattel mortgage was recorded on June 26th, it appears more reasonable to believe that she called at the store on June 28th, *Page 92 
the day after the transaction appeared in the Legal News, as testified by her, rather than on August 3rd or 4th, as testified by the employees. On certain other material facts, such as whether or not the papers were presented to Mr. Rester for signature, at which time he stated that he could not afford the box and refused to sign, the fact that plaintiff's witnesses, particularly Mr. Wilkinson, cannot remember, also tends to corroborate defendants' testimony.
It seems remarkable to us that if Mr. Rester was present during the consummation of the deal and fully consented thereto, as testified by Mr. Roux and Mr. Wilkinson, that he should not have signed the order and contract, and his failure to do so is not explained to our satisfaction. On the other hand, if we are to believe the testimony of the defendants to the effect that Mr. Rester refused to sign the papers and thereupon left the store, it seems that such action was a sufficient indication that he did not approve of the purchase of the refrigerator and was a rather strong silent protest, to say the least.
It is contended by plaintiff that the real cause of defendant's desire to rescind the contract was that after the purchase of the refrigerator defendant had bought a cooling system for his milk and no longer required the refrigerator. The evidence shows that Mr. Rester purchased the cooling system in question on May 17th, some 35 days prior to the refrigerator transaction, and that according to the terms of the purchase of the cooling system, presumably it was paid on June 10th.
Much is said about the box being returned to plaintiff some six months or more after its purchase. Mr. Rester explains his inability to return the box before then. It was the duty of the plaintiff to take up the article which had been purchased by the wife without the consent of Rester and delivered and installed in his absence. It was not the duty of Rester to return the article, and the fact that it was not returned to him immediately after its use was discontinued cannot be construed as a ratification of the purchase.
"To execute voluntarily under article 2272, Rev.Civil Code, is to execute with the intention to confirm or ratify. The act fromwhich confirmation or ratification is sought to be deduced mustevince such intention clearly and unequivocally. None will beinferred where the act can be otherwise explained. In cases ofdoubt, the party to whom the act is opposed must have the benefitof the doubt." (Italics ours.) Breaux v. Savoie et al., 39 La.Ann. 243, 1 So. 614.
"The ratification of a contract can only be deduced from facts,when those facts evince clearly, and absolutely, the intention toratify." (Italics ours). Hamilton v. Hodges, 30 La.Ann. 1290; Foster Glassell Co. v. Harrison, 173 La. 550, 138 So. 99; International Accountants Society v. Santana, 166 La. 671,117 So. 768, 59 A.L.R. 276; Celeste Sugar Co. v. Dunbardukate Co.,160 La. 694, 107 So. 493. See, also, Lacaze v. Kelsoe, La.App., 185 So. 676.
While we are fully conscious of the fundamental principle that a judgment of the lower court should not be reversed on questions of fact unless manifestly erroneous, from the above considerations we are forced to the conclusion that the plaintiff has failed to bear the burden of proof of showing that the defendant Rester, actively or passively, consented to or affirmed or ratified the purchase of the article in question by his wife, and we therefore feel that the defendant is not bound by the actions of his wife.
The defendant has not urged his reconventional demand before this court, and it is therefore considered abandoned.
For the reasons assigned, the judgment appealed from is annulled, avoided and reversed, and it is now ordered that plaintiff's suit be dismissed at his costs in both courts.