170 So.2d 779 (1964)
HAGEDORN MOTORS, INC.
v.
Lydia GODWIN.
No. 6242.
Court of Appeal of Louisiana, First Circuit.
December 21, 1964.
*780 Jim W. Richardson, Jr., Bogalusa, for appellant.
Robert T. Rester, Bogalusa, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.[*]
LANDRY, Judge.
Plaintiff, Hagedorn Motors, Inc., instituted this action for deficiency judgment against defendants, Lydia and M. C. Goodwin (husband and wife) following sale by executory process of an automobile purchased by defendant wife. The trial court rejected plaintiff's demand against defendant husband and from said unfavorable determination plaintiff has appealed.
The facts of this case are relatively simple and virtually without dispute except as will hereinafter otherwise appear.
In or about August, 1962, defendants voluntarily separated and remained so on January 25, 1963, on which latter date Mrs. Godwin purchased in her own name a 1959 Pontiac Sedan from plaintiff. In representation of the unpaid purchase price (after allowance of a credit for a 1956 Chevrolet taken in trade), she executed a note to appellant payable in thirty monthly installments of $110.25 each and secured payment thereof by granting appellant a chattel mortgage on the vehicle thusly acquired. At the time of said purchase by his wife, defendant husband was employed at a mill in Bogalusa, Louisiana, from which employer he received take home pay in the sum of $73.00 weekly. In addition to the Chevrolet traded in on the sale in *781 question, defendant also owned a 1962 Pontiac. It is uncontroverted that at this time defendant husband was insolvent and had filed application in Federal Court to be adjudged a bankrupt.
According to the record, subsequent to the separation of the spouses involved herein, Mrs. Godwin and the children of the marriage, (undetermined in precise number insofar as the testimony reflects), continued to reside in the City of Bogalusa.
From the date of the separation continuously to the date of the controversial purchase in question, defendant husband by mutual agreement with his wife, paid the latter the sum of $25.00 weekly for the support of the family. Subsequent to the date of purchase and prior to date of trial the husband increased these contributions to $30.00 per week. In addition, Mr. Godwin purchased medicine and clothing for the children from time to time. Mrs. Godwin supplemented her income by engaging in her profession as a nurse although her remuneration in such capacity is not shown in the record. One or two of the smaller children attended school approximately two blocks from the family residence and the oldest boy attended high school to and from which he was furnished transportation by school bus which passed in front of the family home. Prior to purchasing the Pontiac, Mrs. Godwin used the 1956 Chevrolet for general family purposes and as member of a car pool to which she belonged for the purpose of commuting to work at a hospital situated approximately 45 miles from Bogalusa. The Chevrolet became inoperable due to obsolescence, hence the purchase of the vehicle from plaintiff herein.
Appellant's contentions, succinctly stated, are that the trial court erred in concluding (1) the replacement vehicle purchased by the wife was not a "necessity" for which the husband is obligated to pay irrespective of his consent to the purchase; (2) in holding that the husband was willing to furnish the wife the 1962 Pontiac which he owned; and (3) failing to find that the husband ratified and consented to the purchase and therefore became liable to appellant for the price of the automobile.
It is settled law that a husband, as head and master of the community can be held liable for a debt contracted by the wife if the purchase is necessary for her convenience and the husband fails or refuses to supply same. LSA-C.C. Article 120; D. H. Holmes Co., Ltd. v. Morris, 188 La. 431, 177 So. 417, 114 A.LR. 905; Tricketts, Inc. v. Viser, La.App., 137 So. 2d 424; Mathews Furniture Co. v. La Bella, La.App., 44 So.2d 160.
It is elementary that what might be considered "necessary" in one case may not as a matter of course be so regarded in another depending upon the financial, social and cultural status of the parties involved. Therefore, the "necessity" contemplated by LSA-C.C. Article 120 applies to those things which the husband should have provided for the wife's convenience in accordance with the husband's means and conditions as appears in each individual case. Mathews Furniture Co. v. La Bella, La. App., 44 So.2d 160.
Notwithstanding the wife's purchase may not qualify as "necessary" within the contemplation of the applicable codal authority, the husband may nevertheless be held liable if he acquiesces therein, receives the benefit thereof and does nothing to repudiate or deny responsibility for the sale. In such circumstances the husband's liability is predicated upon ratification by silence and inaction constituting implied consent. LSA-C.C. Articles 1817, 2402; Rahier v. Rester, La.App., 11 So.2d 87.
For the husband to be liable for the wife's purchase pursuant to authority of LSA-C.C. Article 120, the purchase must first of all be "necessary" as viewed in the light of the economic, social and cultural level of the litigants. In the case at bar defendant husband, a mill worker, earns a take home pay of only $73.00 per week *782 from which he was paying his spouse the sum of $25.00 weekly at the time of the purchase in question. It is of some significance that neither the precise number of the children of the marriage nor the exact wages earned by the wife are shown in the record. That the family was in rather dire economic straits is evidenced by the pending bankruptcy action of the husband on the date of the wife's purchase herein. Notwithstanding such economic plight, the parties owned the two vehicles herein previously described. To hold a second automobile a "necessity" to the estranged wife of a petitioner in bankruptcy having a take home pay of $73.00 weekly out of which he is paying his spouse $25.00 weekly for support, in the opinion of this court, defies all reason. Under such circumstances we fail to see the possibility wherein ownership of a second vehicle could be "necessary". Indeed, in our judgment, a second car could only constitute a luxury unquestionably beyond the financial capacity of the parties. That this is so in the case at bar is amply demonstrated by the fact that defendant wife was discharged from plaintiff's debt in her own bankruptcy proceeding and plaintiff husband himself was in the process of being adjudicated a bankrupt.
While we can readily conceive circumstances wherein an automobile could easily constitute a necessity to a wife and children dependent upon the circumstances of the parties involved, no such facts and circumstances exist in the case at bar. Assuming arguendo, a car was a necessity to Mrs. Godwin, we are convinced it was a necessity the husband could not afford.
We shall now consider the contention defendant husband is liable because of his consent, ratification and approval of the sale in question.
In essence defendant husband testified he accompanied his wife to plaintiff's establishment to assist her in selecting the vehicle to be purchased. According to Godwin, he advised plaintiff's salesman, Robertson, that he, plaintiff, was not purchasing the car but rather the sale was to be to the wife who alone would be solely responsible therefor. Godwin further testified he declined to sign any documents whatsoever in connection with the transaction and expressly informed Robertson that he, Godwin, would not and could not be bound in any way as he was then unable to pay his own bills and was in the process of himself being adjudged a bankrupt.
The substance of Mrs. Godwin's testimony in this respect is that her husband was present at the time of sale and did assist her in choosing the vehicle purchased. However, she stated that all conversation between her husband and Robertson took place out of her presence.
Appellant's agent, Robertson, testified he talked with defendant husband on the date of the sale and was informed the sale was to be made to Mrs. Godwin. He further acknowledged Godwin told him the sale was to the wife to whom support payments were being voluntarily made and Godwin further advised that with the wife's own income and her alimony payments she would have sufficient funds to discharge the note. Robertson also conceded Godwin informed him that he, Godwin, could not meet his own payments at the time. Lastly, Robertson admitted he was aware (by way of rumor) that Godwin had filed a petition in bankruptcy.
Under such circumstances, it is clear beyond all doubt that the sale to Mrs. Godwin was neither expressly nor impliedly ratified by either any overt action or silence or inaction on the part of defendant husband. The record reveals beyond the shadow of a doubt that the husband did absolutely nothing which could be remotely construed as approval, acquiescence or ratification of the transaction as a community undertaking rather than the personal act of the wife acting in her own individual capacity. On the contrary, every act, gesture and representation of the husband clearly and unmistakably evidenced his unwillingness *783 to consider the sale a community transaction. We fail to see wherein he could more clearly have repudiated the sale as a community purchase.
Esteemed counsel for appellant places considerable reliance upon the rule enunciated in Rahier v. Rester, LaApp., 11 So.2d 87. While we are in complete agreement with the views therein expressed, we find the principle therein expounded completely inapplicable inasmuch as the record before us discloses defendant husband clearly and unmistakably repudiated the sale as a community transaction and refused to be personally bound for the debt.
Accordingly, the judgment of the trial court is affirmed at appellant's cost.
Affirmed.
NOTES
[*] Due to the death of HERGET, J., prior to rendition but after his concurrence therein, this opinion is rendered unanimously by ELLIS, LOTTINGER, LANDRY and REID, JJ.