## PRUDENTIAL INS. CO. OF AMERICA
### v, JOHNSON et al.
#### No. 16739.

Court of Appeal of Louisiana. Orleans.

Nov. 2, 1937.

L. H. Gosserand, of New Orleans, for appellant.

Gill & Simon and Warren M. Simon, all of New Orleans, for appellee.

JANVIER, Judge.

Isaac Johnson died on July 31, 1935. He was insured in the sum of $1,000 in Prudential Insurance Company of America; that company having issued to his employer, United Theaters, Inc., a "group policy" and to Johnson a participating certificate in the amount mentioned. In the certificate, his wife, Sadie, was named beneficiary; but before the death of Johnson the insurer had received a card, purporting to have been signed by him, requesting that his mother, Daffney Johnson, be substituted as beneficiary in place of his said wife, Sadie.

After his death, the insurer, faced with conflicting claims of Sadie and Daffney, filed this interpleader proceeding under the provisions of Act No. 123 of 1922 and, depositing in the registry of the civil district court the proceeds of the said certificate, cited the said claimants to appear and present their respective claims.

Sadie, the wife, answered within the time granted by the interpleader statute, to wit, ten days, but Daffney, the mother, instead of answering within that time, sought and obtained an additional delay of ten days within which to answer. Sadie filed a plea of estoppel, contending that the order granting the extension had been improvidently issued, that the rival claimant should not be heard because of the delay, and that, therefore, because of the effect of the interpleader statute, she, Sadie, as the only claimant, should be sent into possession of the fund.

When that issue reached this court, we held that the answer, which, within the additional delay, had been filed by Daffney Johnson, should be considered, and we remanded the matter for trial of the controversy between the rival claimants. See Prudential Insurance Company of America v. Johnson et al. (La.App.) 168 So. 381.

The wife, originally designated as beneficiary, claimed to be entitled to the proceeds unless there had been effected a change of beneficiary and obviously was entitled thereto unless there had been effected such a change. Therefore, the issue presented was whether the change had been legally made; Sadie contending that the technical contractual requirements of the insurer as to change of beneficiary

had not been complied with, and furthermore, that on the card requesting the change, there was no actual signature of Johnson, but that the signature appearing thereon had been forged. When the matter came up on these issues, the judge, a quo, excluded evidence tendered to show that the purported signature of Johnson was a forgery, being of the opinion that there should first be tendered proof that the formal requirements of the insurer concerning the method to be followed in effecting change of beneficiary had been complied with. In other words, our brother below held that it was of no importance whether or not Johnson had actually made application for the change, if the formal requirements of the insurer concerning changes had not been complied with. When this ruling was made in the court below, counsel for Daffney Johnson made a statement which the trial judge believed to be to the effect that there was no evidence available to show that the formal requirements had been complied with, and thereupon he rendered judgment in favor of Sadie Johnson, dismissing the claim of Daffney Johnson. On appeal from that judgment, we found that the statement of counsel for Daffney Johnson made in the court below was not intended to be a declaration that no evidence was available, and we therefore remanded the matter for such evidence on that question, and for such evidence on the question of the alleged forgery as might be available to either claimant. See Prudential Insurance Company of America v. Johnson et al. (La.App.) 172 So. 562. The matter was then tried again in the district court, and judgment was rendered in favor of Sadie Johnson, the wife; the district judge being of the opinion that the evidence conclusively showed the signature on the card to be a forgery. This is an appeal from that judgment.

Whether the policy requirements concerning change in beneficiary were complied with and whether, as between rival claimants, those policy requirements may be relied upon by either, are interesting questions which need not be inquired into until it first be shown that the application for change is genuine and was executed by the insured. If he did not execute the document, then the entire case of the alleged substituted beneficiary must fall.

■ Her counsel now contends that it is sufficient if it appears that the signature, even though not written by Johnson, was executed by some one else in Johnson's presence and by his authority. But we cannot agree with him in this. Ordinarily, it is true that a person is bound by a signature executed in his presence and by his authority, although by some one else, but the issue here has become the veracity of witnesses, and Daffney's witnesses all maintain stoutly that they actually saw Johnson sign the document in his own hand, and that is what she herself alleges that he did. She does not claim that it was executed by some one else on his behalf, and, even if we felt that the document had been so executed, to so hold would be to stamp as untruthful all of Daffney's witnesses, who state unequivocally that they saw Johnson sit on the edge of the bed and take an "ink pencil" and sign the document in his own hand. Therefore, it will not do now to make the contention that possibly some one else signed for him, because that contention, as we have already said, was not pleaded, and, if well founded, would destroy completely the testimony of all of her witnesses. The sole issue, then, on this feature of the case, is the genuineness, vel non, of Johnson's signature.

■ The evidence conclusively shows that Johnson could write his name only very laboriously and imperfectly. In doing so he never wrote his first name, Isaac, in full, but always signed with the initial I, which he executed very much like a J, running the lower part far below the line. The card which Johnson is supposed to have signed is introduced in evidence, and the name thereon is "Isaac Johnson"; the first name written out in full, the "I" properly formed and not extending below the line, and all of the letters of both names quite creditably written. There are in the record four admittedly genuine signatures of Johnson, and no one of them resembles in the slightest degree the name which appears on the card. There is also expert testimony to the effect that the person who signed the four documents to which we have referred could not possibly have been the person who signed the name "Isaac Johnson" on the card by which change of beneficiary is requested. The evidence to the effect that Johnson had learned to read and to write is overwhelmingly rebutted by the testimony of his intimate

friends who had known him well for years, and who testified that what little he could do in that line had been learned from his wife, and that it was impossible for him to do more than execute a mere childish scribble when attempting to sign his name.

In fact, the argument which is now made, that it is sufficient to show that the name was executed on Johnson's behalf in his presence and by some one else, is in itself practically a confession that the name on the card was not written by Johnson.

We deem it unnecessary to analyze in detail the evidence on this question. We agree with our brother of the trial court that "the man who wrote the signatures on the payrolls no more wrote the signature 'Isaac Johnson' on the change-of-beneficiary card than he wrote the Declaration of Independence." Since Johnson did not make the application to change his beneficiary, it follows that the original designation must stand.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed at the cost of appellant.

Affirmed.