WATSON, Judge.
Plaintiff, Teche Realty & Investment Company, Inc., filed suit against defendant, A.M.F., Inc., to recover $8,800 allegedly due because of defendant’s failure to remove certain property from plaintiff’s premises for a period of some eleven months. Plaintiff leased its premises known as “Torrido Bowling Lanes”, to New Iberia Bowling Lanes, Inc. Defendant, A.M.F., leased some bowling equipment, and sold other bowling equipment to New Iberia Bowling Lanes, Inc., retaining vendor’s liens and chattel mortgages on the property sold. At the termination of the lease, A.M.F. failed to remove its property from the premises, and plaintiff sued to recover for this occupancy on the basis of quasi contract, quantum meruit, unjust enrichment, preserving the property, use and occupancy of the premises and storage.
The trial court rendered judgment in favor of plaintiff and against defendant in the amount of $1800, and defendant has appealed. Plaintiff has answered the appeal asking that the award be increased to the sum of $5,325.
Defendant-appellant, A.M.F., contends that the trial court erred as follows:
1. Holding that defendant had an obligation to remove the property leased and sold from plaintiff’s premises and is liable for its failure to do so.
2. Finding A.M.F. liable for failure to remove its property from the premises when Teche demanded payment of $925 per month rental and the demand for removal was conditioned on payment of this amount.
3. Awarding judgment in favor of plaintiff in the amount of $1800.
Most of the facts found by the trial court are undisputed and we will summarize the pertinent findings, which we accept, as follows:
(1) In 1964, plaintiff leased a building to New Iberia Bowling Lanes, Inc. for ten years at $800 per month.
(2) Thereafter, New Iberia Lanes purchased through credit sales certain bowling lanes from A.M.F.; these were installed on the premises, but A.M.F. retained chattel mortgages and vendor’s liens.
*434 (3) Also, New Iberia Lanes leased from defendant sixteen automatic pin-spotting machines which were also installed.
(4) At the time of the placement of the mortgaged and leased property in the premises, plaintiff and New Iberia Lanes executed an agreement in which plaintiff agreed to the installation and use of the mortgaged property, notably the bowling lanes, agreeing that A.M.F. could enter the premises and remove the equipment, plaintiff specifically waiving in favor of A.M. F. any lien against the equipment.
(5) On July 17, 1972 plaintiff sued to evict New Iberia Lanes for failure to pay the rent and on July 25, 1972 judgment was rendered in favor of plaintiff ordering New Iberia Lanes to vacate the premises and delivered possession to plaintiff by July 26, 1972. A writ of possession was ordered to be issued, if New Iberia Lanes failed to vacate the premises, and the sheriff was ordered to execute it.
(6) On July 27, 1972, plaintiff wrote to A.M.F. and informed the defendant of the court’s order, requesting that A.M.F. remove its equipment by August 26, 1972 and plaintiff demanded payment from A.M.F. in the amount of $925, if A.M.F. should take thirty days to remove the equipment. (A.M.F. contends that it was forbidden to remove the equipment without paying ,the $925.)
(7) Neither the leased nor the mortgaged equipment was removed by September 21, 1972 at which time plaintiff obtained a writ of possession commanding the sheriff to place plaintiff in full and complete possession of the premises.
(8) On the same date A.M.F.’s attorney wrote a letter to the sheriff of Iberia Parish stating that the removal of the property from the premises in an improper manner would cause it to be damaged or destroyed and that the sheriff would be responsible. The letter further stated that dismantling this type of equipment requires specialized equipment and personnel. The letter offered on behalf of A.M.F. to use its equipment and personnel but stated that A.M.F. would expect to be paid as court costs for this work.
(9) On October 11, 1972, A.M.F.’s attorney again wrote the sheriff stating that A.M.F. would remove the leased equipment, that is, the pin-spotters, at its own expense but as to the bowling lanes, the letter stated that A.M.F.’s only interest was as the holder of chattel mortgages and if it removed this equipment, A.M.F. would expect to be paid the sum of $3600 in advance.
(10) On October 19, 1972, the leased property was removed.
(11) On October 10, 1972, A.M.F. filed suit against New Iberia Lanes to obtain judgment and foreclose on the chattel mortgages. The trial court especially noted that although this suit was not filed until November, New Iberia Lanes had not paid any amounts due under the promissory note secured by the chattel mortgages since February 10, 1972, several months prior to the eviction of July, 1972.
(12) Certain additional legal steps were taken by plaintiff in an attempt to have the 16 bowling lanes removed from the premises and various orders and writs were issued in connection with these attempts.
(13) Finally, on June 26, 1973, the mortgaged property was seized and removed from the premises by the sheriff of Iberia Parish under the writ of seizure and sale issued in A.M.F.’s suit for foreclosure on the chattel mortgages held on the bowling lanes, not in plaintiff’s suit.
(14) On July 18, 1973, the mortgaged property was sold at sheriff’s sale and purchased by A.M.F. for $10,709 with benefit of appraisal.
We will comment on the disputed finding of fact concerning the demand by plaintiff for rent for thirty days, possibly as a condition for removing the equipment. *435 We hold that this point is moot. No attempt was ever made to remove the leased equipment within the thirty day period. No suit was instituted to assert the vendor’s lien and chattel mortgage on the bowling lanes until eleven months had passed. We find that the demand for $925 did not hinder A.M.F. because A.M.F. did not attempt to assert its legal rights.
The trial court found that the facts present a close legal question but awarded plaintiff judgment for the reasonable value of the use of premises occupied by the leased and mortgaged property after September 26, 1972. This allowed A.M.F. a period of 60 days following the lease termination to elect to remove the leased and mortgaged property from the premises or abandon it.
We agree with and quote with approval the following reasons for judgment by the trial court:
“At the outset it must be recognized that the right of New Iberia Lanes to maintain the leased and mortgaged property on the premises arose as a result of the lease agreement, as amended, which was entered into by Plaintiff and New Iberia Lanes. This lease agreement was judicially terminated on July 25, 1972, for failure of the lessee to pay the rent due. Upon termination of the lease agreement between plaintiff and New Iberia Lanes, the right to maintain the leased and mortgaged property on the premises likewise terminated, subject however, to the right of the defendant, AMF, to enter upon the premises and remove said machines, equipment, etc. free of any claim, interest, right or lien by the plaintiff. The record reflects that New Iberia Lanes had no interest in removing the leased and mortgaged property as it was insolvent. Plaintiff had no interest in the removal of this property other than to clear the premises of the encumbrance. On the other hand AMF had the only real and actual interest in this property as it was owner of the leased property and held a vendors lien and chattel mortgage on the mortgaged property.
“In my opinion, the condition in the lease contract which permitted defendant to remove the leased and mortgaged property from the premises free of any claim by plaintiff constituted a stipulation pour autrui under RCC Article 1890, and, although such condition failed to specify a time period within which such removal should be effected or at whose expense such items should be removed it was implicit from the nature of the contract and presumably was the intent of the parties that such removal would take place at the cost of defendant and within a reasonable time reckoning from the termination date of the agreement under which said machines were installed and used. (RCC Article 2026)
“It is true that defendant had no absolute obligation to remove the leased and mortgaged property from the premises of the plaintiff and this because the stipulation clearly states that in the event of termination of the agreement under which said machines were installed and used the agents, representatives, etc., of AMF may enter and remove such equipment. On the other hand, this stipulation must be held to imply that AMF would elect within a reasonable time following termination of the agreement whether it would exercise this right to remove or whether it would abandon such property. It is inconceivable that the parties to the contract intended that AMF should be allowed to encumber the property of plaintiff for an indeterminate period of time (weeks, months or years) before electing to either remove its property or abandon same. It is likewise inconceivable and defies imagination to suggest that if AMF elected to remove the leased and mortgaged equipment it was intended that plaintiff should bear the cost of removing same.
“Defendant does not seriously contend that it had no obligation to remove the *436 property owned by it but leased to New Iberia Lanes. The record reflects that in recognition of this obligation AMF did in fact remove the leased property from the premises at its own expense on October 19, 1972. However, as to the mortgaged property defendant contends that it cannot be held personally responsible merely because the mortgaged property remained on the premises after having been placed thereon by the mortgagor, and in this connection urges that AMF did not remain and continue to occupy the premises rather it was occupied by property belonging to New Iberia Lanes. It is true that New Iberia Lanes actually owned the bowling lanes which encumbered the premises, however, AMF as mortgagee of such property had a real and actual interest in this property which it clearly desired to protect. In fact, it was well within the knowledge of AMF long prior to termination of the lease that New Iberia Lanes was defunct (no payment on the indebtedness to AMF having been made subsequent to February 10, 1972) ; that New Iberia Lanes would not ■ remove the leased and mortgaged property; and, that foreclosure under its chattel mortgages was its only chance to recover all or some part of the amount owed to it by New Iberia Lanes (See numbered paragraphs 17 and 18). That AMF had a real and actual interest in the property encumbering the premises which it desired to protect is clearly established by the correspondence between AMF’s attorney and the Sheriff. On the other hand, plaintiff had no interest whatever in such property having previously waived any possible interest therein in favor of AMF.
“Defendant clearly had a right to protect its interest in the leased and mortgaged property in the manner which it deemed best but it could not do so at such time and in such a manner as suited its best interest without regard to the rights of the plaintiff. In my opinion a period of sixty (60) days following lease termination was a reasonable time within which AMF could have elected to remove the leased and mortgaged property from the premises or abandon same and having failed to do so AMF is responsible to plaintiff for the reasonable value of the use of plaintiff’s property occupied by the leased and mortgaged property under quasi contract from such date until its actual removal.[1]
“Quasi contracts are defined in RCC Article 2293 as follows: ‘Quasi contracts are the lawful and purely voluntary act of a man, from which there results any obligation whatever to the third person, and sometimes a reciprocal obligation between the parties.’
“The essential elements of quasi contracts are a benefit conferred on the defendant by the plaintiffs, appreciation by the defendant of such benefits, and acceptance and retention by the defendant of such benefits under circumstances such that it would be inequitable for him to retain the benefits without payment of the value therefor. In the instant case defendant made use of plaintiff’s property as above set forth during the period above set forth which use enured to defendant’s benefit under circumstances such that it would be inequitable for defendant to retain such benefits without payment of the value therefor. Masera v. Rosedale Inn [La.App.], 1 So.2d 160.
“Finally, defendant suggests that plaintiff should not recover because as lessor it had the right under the writ of possession issued by the court to have caused the Sheriff of Iberia Parish to have placed plaintiff in full and complete possession of the property described therein, including a clearing of the property of all other persons from the property of plaintiff (RCC Article 2714 and CCP Articles 4733 and 4734). In this connection suffice it to say that the failure of the Sheriff of Iberia *437 Parish to perform his ministerial duty pursuant to the order of eviction dated July 25, 1972 and the writ of possession executed September 21, 1972 should not and does not relieve defendant of its obligation under equitable principles to reimburse plaintiff for the reasonable value of the use of its property during the period aforesaid. In this connection it is noted that the failure of the Sheriff to perform this ministerial duty was prompted in great measure by the letter addressed to the Sheriff in September and October of 1972 cautioning against the improper removal of such property to the detriment of the defendant in which event AMF indicated it would hold the Sheriff responsible in damages. For the foregoing reasons I find that plaintiff is entitled to recover under ‘quasi contract’ for the reasonable value of the use of such portion of the plaintiff’s premises occupied by the leased and mortgaged property for the period from September 26, 1972 to July 26, 1973.
“I consider that the reasonable value of the use of plaintiff’s property which was in fact occupied by the mortgaged property[2] during the period of nine months beginning September 26, 1972 and ending June 26, 1973 to be the sum of $200.00 per month or the total sum of Eighteen hundred dollars ($1800.00). I consider this to be a fair and reasonable value in view of the fact that the area was used solely to warehouse, as it were, the bowling lanes; that the area immediately to the front of this area was rented from November, 1972 thru June, 1973 for an average monthly rental of $434.00; that during the aforesaid period the plaintiff received no other offers to rent the premises other than a rather vague inquiry received from the telephone company; and, that since June, 1973 to the taking of the deposition of Mr. Trappey the entire building had remained vacant.
For the foregoing reasons which we adopt, the judgment of the trial court is affirmed. All costs are taxed to defendant-appellant, AMF, Inc.
Affirmed.

“i. I consider sixty (60) days to be reasonable under the circumstances considering that AMF, at least insofar as the mortgaged jn-operty was concerned, was required to file execution proceedings under the chattel mortgages before the properties could have been seized and removed from the premises.

. I make no estimate as to the value of flip area occupied by the leased property as it is insignificant and could not have been used separate from the area occupied by the mortgaged property (See Deposition of Bernard Trappey and sketch attached thereto).” (TR. 329-135)