528 So.2d 1068 (1988)
FIRST NATIONAL BANK OF COMMERCE
v.
Jessie P. ORDOYNE, Sr. a/k/a Jessie P. Ordoyne and Patricia Ordoyne Bordelon.
No. 88-CA-104.
Court of Appeal of Louisiana, Fifth Circuit.
June 28, 1988.
John M. Garic, DeMartini, LeBlanc, D'Aquila & Volk, Kenner, for plaintiff-appellant.
Paul J. Galuszka, New Orleans, for defendants-appellees.
Before CHEHARDY, GAUDIN and GRISBAUM, JJ.
GRISBAUM, Judge.
This appeal relates to a suit on a past due credit card account. From a judgment in favor of the defendant-cardholder, the Bank appeals. We affirm.
PROCEDURAL HISTORY
On December 16, 1986, plaintiff, First National Bank of Commerce, filed suit against Jessie P. Ordoyne and Patricia Ordoyne Bordelon, claiming sums due on a "revolving VISA account." On December 23, 1986, Mr. Ordoyne answered, denying the allegations and asserting that his wife had forged his name on the application, he did not know of the issuance of the card, and he had never used it. On January 20, 1987, plaintiff moved for summary judgment against Mr. Ordoyne. On April 14, 1987, summary judgment was denied. Meanwhile, on January 21, 1987, plaintiff was granted a default judgment against Patricia Ordoyne Bordelon.
On December 3, 1987, judgment was signed in favor of Mr. Ordoyne, reciting, "The credit application relied on was a forgery and was never verified."
*1069 FACTS
A hearing was held on September 15, 1987. First called by the plaintiff was Mr. Jessie P. Ordoyne. He testified he has lived at his present address for some 14 years. He denies that his signature appears on exhibit P-1, a credit card acceptance form. Ordoyne further maintains:
prior to the lawsuit I wasn't aware that I had a VISA card, that my wife had applied for one, until after we had our divorce. And that was ... when I got the first bill by the house; that was ... some time in January of 1986, and that's when I was aware of the VISA card.
He admits he was married to Patricia Ordoyne and she was living with him at his given address until December 27, 1985.
Mr. Ordoyne reports he received, between April 15 and June 16, 1986, two or three calls from the bank, inquiring why he was not making credit card payments. He told the callers, "I wasn't informed about it." His son, however, made two VISA payments on his father's behalf. He refused to make further payments, which apparently would have covered continuing bills incurred by his wife, who had become involved with another man. Mr. Ordoyne did call to order a copy of his alleged credit card application in order to verify that he had never signed same. He says he told the bank his signature on the application was forged. In addition, he informed the bank that he and his wife were divorced/separated.
ANALYSIS
From our review of the record, two queries are presented:
(1) Whether the plaintiff proved its case, and
(2) Whether the defendant in any manner failed in its burden of proof.
CONTRACTUAL OBLIGATION
The record shows that Mr. Ordoyne's version of events has been that the plaintiff-appellant never had a contractat least not with him, for he never signed any contract nor even knew of any credit application or credit card issued. A careful review of the record provides us with no basis on which to conclude the trial court manifestly erred in crediting the defendant-appellee's testimony. Mr. Ordoyne's account of events is remarkably similar to the factual scenario credited in Nationwide Finance Co. of Gretna, Inc. v. Pitre, 243 So.2d 326, 326-28 (La.App. 4th Cir.1971). Accordingly, we adopt the Nationwide Finance approach, to wit:
It is clear from the record that Mr. Pitre [the alleged debtor] did not authorize his wife to sign the note on his behalf and had no knowledge of the transaction until after it occurred. While a person will be bound by his signature being executed by another person when done in his presence and under his authority,1 ratification must be shown when his signature is executed by another person outside of his presence and without his knowledge or authority. See Gulfco Finance Company of Livingston v. Lee, 241 So.2d 301 (La.App. 1 Cir.1970).
For ratification of an unauthorized act, the facts must indicate a clear and absolute intent to ratify the act, and no intent will be inferred when the alleged ratification can be explained otherwise. Lacaze v. Kelsoe, 185 So. 676 (La.App. 2 Cir.1939); Derouen's Estate v. General Motors Acceptance Corp., 245 La. 615, 159 So.2d 695 (1964); Williams v. Arkansas Louisiana Gas Company, 193 So.2d 78 (La.App. 2 Cir.1966).
In making payments on the account, Mr. Pitre clearly did not intend to be bound on the note, and was only paying part of each payment to help his wife. While Mr. Pitre felt that he was legally bound on the note until he consulted an attorney, at no time did he desire to be bound on the note or intend to ratify the forged signature. In fact, the record is clear that Mr. Pitre repudiated, rather than ratified, the unauthorized act at every opportunity.
Plaintiff's reliance on Perdido Finance Company v. Falgout, 77 So.2d 896 (Orl.La.App.1955) is misplaced. In that case the husband gave prior authorization to his wife to sign his name on a note, and subsequently made payments, *1070 having already indicated his clear intent to be bound on the note.
For these reasons, we hold that there was no ratification in this case. Nationwide's recovery, if any, on the note must be against Mrs. Pitre, the party with whom it dealt.
However, Nationwide pleaded and introduced evidence that Mr. Pitre benefited from certain payments made to alleged creditors of the community, and prayed for recovery to the extent of these payments on a quasi-contractual basis.
For the doctrine of unjust enrichment to apply, there must not only be an enrichment of one person and the impoverishment of another, but also an absence of a legal cause for the enrichment of one at the expense of the other. See, LSA-R.C.C. arts. 1965 and 2293 et seq. Although we have held in this case that Nationwide cannot recover against Mr. Pitre on the note, there is evidence in the record that, as head and master of the community, he was relieved of certain community obligations by payments made by Nationwide. To that extent Mr. Pitre was enriched without legal cause at the expense of Nationwide. We therefore hold that Nationwide is entitled to recover the sum of $174.00 paid on the Pitres' account with Western Auto Stores and the sum of $116.53 applied to pay off the Pitres' prior loan with Nationwide. The proof of payment of the other creditors was insufficient to warrant recovery.
1 Prudential Ins. Co. of America v. Johnson, 176 So. 625 (Orl.La.App.1937); Conts v. Guaranty Bank & Trust Co., 174 La. 503, 141 So. 41 (1932); Waggoner v. Grant Parish Police Jury, 203 La. 1071, 14 So.2d 855 (1942).
Id. at 328-29.
From the record, we note the trial court credited the defendant's assertions that he knew nothing of the credit card application. Thus, the defendant never consented to any contract with the plaintiff, and, knowing nothing about any actions of the plaintiff in conformity with the alleged contract, never ratified same. See Rahier v. Rester, 11 So.2d 87, 89 (La.App. 1st Cir.1942). Neither did the defendant by any prior actions to which the plaintiff was privy bestow apparent authority on his spouse to so contract. Cf. Alphonse Brenner Co. v. Dickerson, 283 So.2d 849 (La.App. 2d Cir.1973), cited in brief by the plaintiff-appellant. In sum, the plaintiff has no contract with the defendant. Moreover, since it never consented to contract with any other party and the defendant's credit status appears to be the primary cause for the extension of credit, our conclusion that the defendant's signature was forged in essence demonstrates that the plaintiff has no contract with anyone, but, instead has apparently become the victim of fraud.[1] Consequently, the plaintiff cannot reach the defendant here even by terming him a solidary obligor on the contract by virtue of the community for a time existing between himself and Mrs. Ordoyne. There being no contract, the defendant cannot be a solidary obligor thereon.
DELICTUAL OBLIGATION
Neither is there proof that the husband should be held liable for his wife's apparent fraud. This Circuit has previously embraced prior jurisprudence stating that an action premised on fraudulent activity may sound in either contract or tort. Haggerty v. March, 480 So.2d 1064, 1067-68 (La.App. 5th Cir.1985). The spouse of the fraudulent tortfeasor is not liable for his spouse's offense by virtue of the marriage "unless he authorized his wife to perform the act in question, or unless she is attending to a community mission." First State Bank & Trust Co. v. Fireman's Fund Ins. Co., 399 So.2d 729, 731 (La.App. 1st Cir.1981) and citations therein. See also Bradford v. Brown, 199 So.2d 414, 416 (La.App. 1st Cir.1967). The record does not indicate that either exception is applicable.
QUASI-CONTRACTUAL OBLIGATION
"Quasi contracts are the lawful and purely voluntary act of a man, from which *1071 there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the parties." La.C.C. art. 2293. In Nationwide Finance, supra, as indicated, the plaintiff was permitted to recover under very similar facts. "For the doctrine of unjust enrichment to apply," Nationwide Finance opines, "there must not only be an enrichment of one person and the impoverishment of another, but also an absence of a legal cause for the enrichment of one at the expense of the other." Id. at 328. See Teche Realty & Investment Co. v. A.M.F., Inc., 306 So.2d 432, 436 (La.App. 3d Cir.1975), writ denied, 309 So.2d 681 (La.1975) for a more detailed review of the requisite elements of proof. The burden of proof lies with the party claiming relief under a quasi-contract. Voorhies v. Lomenick, 228 So.2d 509, 511 (La.App. 3d Cir.1969); Brooks v. Britnell, 183 So.2d 434, 436 (La.App. 2d Cir.1966); Hearne v. De Generes, 144 So. 194, 195 (La.App. 2d Cir.1932). Here, the bank has failed to show what charges were made before the dissolution of the community, and, moreover, that the defendant received any benefit whatsoever from the funds. In light of the defendant's assertion that he repaid the charges made before his wife left, no error appears. See Hearne, supra, for an instance of the plaintiff's proof being too vague to allow recovery.
DEFENDANT'S PROOF
The only burdens on the defendant's part are those of meeting the plaintiff's proof and that of making out its affirmative defense of a forged signature. As to the former burden, it appears that the plaintiff never met its initial burdens for tort or quasi-contractual proof. It came closest to meeting its burden under a contract theory. Even here, however, it relies on a presumption to which it appears unentitled in light of the defendant's defense. That is, the presumption of community status for all obligations incurred by a spouse during the existence of the community does not by its terms apply to situations described by La. C.C. art. 2363, which, among other matters, covers "An obligation resulting from an intentional wrong not perpetrated for the benefit of the community." Crediting the defendant's account of the facts, we have just this situation: a spouse who fraudulently obtained a credit card and who has run up the present bill in support of herself and another man. Thus, the plaintiff's much-asserted presumption is inapplicable; consequently, even were we to assume a wife-creditor contract exists, the plaintiff has failed in its burden to demonstrate the obligation's community nature. We do not so assume, however. The crediting of the defendant's case necessitates the conclusion that there is no contract; consequently, the plaintiff cannot use the existence of any contract between it and the wife as a conduit through which to channel personal liability to the husband.
As to the affirmative defense, the defendant asserted same in his answer and claims to have informed the bank by telephone of his predicament on several occasions. This testimony is unrebuttednot countered by the bank's point that it has no written record. It never established that it would write down these assertions and the defendant does not claim to have written follow-up letters. More importantly, in what distills essentially into a credibility call, the trial court obviously believed the defendant. No manifest error appears.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are to be assessed against the appellant.
AFFIRMED.
NOTES
[1] Under La.C.C. art. 1955, "Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent."