538 So.2d 722 (1989)
PHILIP WERLEIN, LTD.
v.
Vera M. DANIELS.
No. 88-CA-1549.
Court of Appeal of Louisiana, Fourth Circuit.
January 30, 1989.
Rehearing Denied March 15, 1989.
Writ Denied May 19, 1989.
*723 Kathleen M. Bilbe, P.C., New Orleans, for Vera M. Daniels.
Robert A. Barnett, New Orleans, for Philip Werlein, Ltd.
Before BYRNES, LOBRANO and WARD, JJ.
WARD, Judge.
Philip Werlein, Ltd., a retail music store, sued Vera Daniels for the unpaid balance on a credit sale. Daniels reconvened, asserting claims against Werlein's for alleged violations of state trade practice laws. She also filed a third party demand against Fredrine Julian, who Daniels claims charged purchases to her using her credit record without her knowledge or consent. The Trial Judge rendered judgment in favor of Werlein's and against Daniels for $1,396.58 plus legal interest, 25% attorney fees and costs. The Judge dismissed Daniels's reconventional demand against Werlein's and declined to render a judgment on Daniels's claim against Julian. Daniels appeals. We affirm.
The facts are disputed, but Werlein's evidence, consisting of exhibits and the testimony of its employees and Julian, shows that Daniels and Julian were employed by the Marriott Hotel in New Orleans. In addition to working together, they were close friends who visited each other's home. Julian even completed Daniels's tax returns.
Werlein's witnesses testified that in September 1986 Daniels and Julian went to Werlein's one day after work where Daniels applied for a credit account. After Werlein's approved the application, Julian executed a retail installment contract for the purchase of a trumpet. Julian paid a deposit in September and made two subsequent monthly payments for the trumpet. Werlein's credit manager, Herb Ybarzabal, testified that as a matter of practice when someone establishes credit at Werlein's he records their driver's license number while confirming the photograph, signature, and social security number on the license. This evidence proves without any doubt that Julian, with Daniels's authorization and in her presence, applied for credit using Daniels's name and credit history.
Julian also testified that in November 1986 she went to Werlein's without Daniels and charged the purchase of a television to Daniels's account, executing another retail installment contract by signing Daniels's name. Upon delivery to her home of the television in late December, Julian testified she tendered a check for the deposit, signing the check with Daniels's name.
The evidence clearly shows that it was Julian and not Daniels who possessed the trumpet and that Werlein's delivered the *724 television to Julian's home. Nonetheless, Julian testified that Daniels saw the television at her home on the day it was delivered, and that when she told Daniels she charged the television to the Werlein's account Daniels merely told her to continue making payments on the account. After Werlein's presented the check to the bank, the bank returned the check with the notation that the checking account was closed.
Werlein's managers testified that Daniels expressed no surprise or concern when first contacted about the delinquency of the account. Instead, she responded to the first call by claiming that a money order for the television deposit was in the mail. When contacted a second time, she asked for a "payout balance" on the account. Not until April 1987 did Daniels make any effort to object to the account or inform Werlein's that she would not pay for the purchases. This evidence shows that Daniels, rather than repudiating the purchases, remained silent and essentially acknowledged the debt when confronted by Werlein's.
On the other hand, Daniels denied ever accompanying Julian to Werlein's, and she denied signing the credit application or the installment contracts. Daniels contends that she had no knowledge of the account established in her name or the purchases made on the account. She claims that Julian was able to complete the credit application because Julian had obtained her personal identification information by preparing her taxes for several years.
To support her testimony, Daniels presented the testimony of an expert, a qualified examiner of questioned documents. In the opinion of Cy Courtney, Daniels's expert, each of Daniels's signatures on the contracts were not written by Daniels. When Julian testified, she admitted to signing Daniels's name for six of the seven signatures on the two contracts. Werlein's unsuccessfully tried to get Courtney to admit that Daniels signed once, as Julian claimed. On cross-examination, Courtney did admit that "anything is possible." The Trial Judge rejected both theories and instead had Daniels sign her name twice as Court Exhibit # 1 and concluded, after reviewing all the signatures in evidence, that Daniels had in fact written each of the seven signatures on the contracts.
After hearing conflicting testimony from the witnesses, the Trial Judge ruled that Daniels and Julian acted together to defraud Werlein's. The Judge specifically stated that he believed the testimony of Werlein's credit and collection managers and found Daniels's testimony incredible. When, as in this case, the Trial Judge's ruling is based on his credibility assessments, we will not reverse the judgment absent manifest error.
In her appeal, Daniels argues that the Trial Judge erred by disregarding the uncontroverted testimony of her handwriting expert, instead reaching his own conclusions about Daniels's signatures on Werlein's contracts. While uncontradicted expert testimony on facts may not be lightly disregarded by the Judge, the testimony nevertheless is not binding on the Court. Morvant v. Smith, 463 So.2d 75 (La.App. 3rd Cir.1985). In this case, the Trial Judge, without giving reasons, disregarded Courtney's testimony. Instead, analyzing the signatures himself, the Judge reached his own conclusions. By ignoring both the opinion of the expert witness and Julian's testimony, the Judge made contradictory findings of fact by finding that Daniels was not present when the television was purchased but signed the purchase contract for the television while at Werlein's. Therefore, with this discrepancy and with no indication from the Judge as to why he rejected Courtney's analysis, we believe the Judge erred by disregarding Courtney's testimony and instead analyzing the signatures himself.
While neither judge nor jury as the finder of fact must accept the opinion of experts whose testimony is only given to aid the judge or jury in their deliberations, under the circumstances in this case, the Trial Judge's finding of fact is clearly erroneous. This error nevertheless is not grounds for reversal in this case because, unlike the Trial Judge, we do not believe Daniels's liability depends on whether she *725 signed the contracts or the credit application.
A person is bound by her signature being executed by another person when done in her presence and under her authority. Nationwide Finance Co. of Gretna, Inc. v. Pitre, 243 So.2d 326 (La.App. 4th Cir.1971). The Trial Judge found, and the evidence clearly shows, that Daniels accompanied Julian to Werlein's to open the account and purchase the trumpet. The evidence, however, neither indicates that Daniels accompanied Julian to Werlein's for the purchase of the television nor that Daniels authorized or even knew about Julian's plan to purchase the television. When a person's signature is executed by another person outside of her presence or without her knowledge or authority, the person must be proven to have ratified the unauthorized act to be bound by her signature. Nationwide, supra. The facts must indicate a clear and absolute intent to ratify the act. First National Bank of Commerce v. Ordoyne, 528 So.2d 1068 (La.App. 5th Cir.), writ denied 532 So.2d 179 (La.1988), quoting Nationwide, supra. In this case, Daniels's conduct displays her clear intent to ratify Julian's unauthorized act of signing her name to the contract for the purchase of the television. Applying principles of agency law (procuration) in this case, we find that the Trial Judge did not err in finding Daniels liable to Werlein's.
Daniels also argues that the Trial Judge erred by admitting some of Werlein's exhibits and by allowing a witness to testify, both over Daniels's counsel's objection. The witness whose testimony is in question should not have been allowed to testify, Daniels argues, because Werlein's did not identify her as a witness until the day of trial. After Daniels objected to the witness testifying, the Judge decided that he would hear the evidence and then reconsider his decision if Daniels was prejudiced by the testimony.
We agree that the Judge erred by allowing this witness to testify without sufficient notice having been given to Daniels. The error, however, is harmless because the witness's testimony could have no possible prejudicial effect on Daniels's case; the witness merely testified that she was the apartment manager for an apartment from which Julian was previously evicted. This testimony neither entered into the Trial Judge's consideration when he rendered judgment nor has it entered into our consideration in this appeal.
Daniels also argues that the Trial Judge erred by receiving most of Werlein's exhibits into evidence because Werlein's had not timely subpoenaed employment records from the Marriott Hotel and did not properly authenticate or lay a foundation before introducing the documents. Even assuming that Daniels was not informed that the Marriott records had been subpoenaed by Werlein's, Werlein's delay in revealing these documents did not adversely affect Daniels's defense. The exhibits consisted of various loan applications to a credit union made by Daniels and one of her co-workers who was a trial witness, loans obtained by Daniels from the credit union, and reprimands issued to Daniels by her Marriott supervisor. Daniels identified and discussed the Marriott documents, each of which she admitted to signing.
Daniels argument that Werlein's failed to lay a proper foundation for the introduction of these exhibits is meritless. The "business records" exception to the hearsay rule has no applicability in this case because Daniels, when testifying, admitted she signed the documents and identified them. The records were admissible without resort to the business records exception to the hearsay rule. Hence, because the witness and exhibits at issue had little or no impact on the judgment, and because the exhibits were properly authenticated by Daniels, this assignment of error is meritless.
Daniels also assigns error to the denial of her motion for new trial which was based on her request that she be allowed to present the testimony of a witness who was unable to testify at trial. Daniels, however, made no proffer of the content of the absent witness' probable testimony to *726 show that the testimony, if presented, would have changed the outcome of the trial. Therefore, the Trial Judge who denied Daniels's motion could not determine whether the testimony would have helped Daniels's defense, nor can this Court. Without a proffer made in the Trial Court, we can find no error in the ex parte denial of the motion for new trial. See, Sonnier v. Liberty Mutual Insurance Co., 248 So. 2d 299 (La.1971). The assignment of error has no merit.
Daniels also argues that the Trial Judge erred by not rendering judgment on her claims against Julian. The record reveals that Daniels's third party claim against Julian was not served until a few days before trial. The Judge's action of severing Daniels's demand against Julian from the case was entirely reasonable and was not erroneous. Moreover, this assigned error is meaningless because after being cast in judgment, Daniels obtained a preliminary default against Julian.
Daniels also claims the Trial Judge erred by dismissing Daniels's reconventional demands against Werlein's for trade practice violations. The Judge found no merit to Daniels's assertions that Werlein's had harrassed or mistreated her. Likewise, given the facts in this case, we find no error in these finding of facts or in the dismissal of these claims.
Accordingly, for the foregoing reasons, we affirm the Trial Court judgment. All costs of this appeal are assessed to Daniels.
AFFIRMED.