631 So.2d 1330 (1994)
Willie SANDERS
v.
James A. WYSOCKI, et al.
No. 92-CA-1190.
Court of Appeal of Louisiana, Fourth Circuit.
January 27, 1994.
*1331 Edward F. Kohnke IV, James H. Brown Jr., Lemle & Kelleher, New Orleans, for defendants-appellants, Richard J. Garrett and New England Ins. Co.
Maury A. Herman, Leonard A. Davis, Herman, Herman, Katz & Cotlar, New Orleans, for defendant-appellant, Cristina Wysocki, individually and as the Administratrix of the Estate of James Wysocki.
Before SCHOTT, C.J., and BARRY, WARD, ARMSTRONG and JONES, JJ.
ARMSTRONG, Judge.
Third-party plaintiff, Cristina Wysocki, individually and as administratrix of the estate of James A. Wysocki ("Wysocki"), appeals a judgment of the trial court dismissing her third-party claims against third-party defendants, Richard J. Garrett ("Garrett") and his legal malpractice insurer, New England Insurance Company ("New England").
This case arises out of a legal malpractice claim filed by Willie Sanders against his former attorneys, Garrett and Wysocki, claiming the attorneys let his claim for personal injuries against a barge owner prescribe. Sanders was injured in an accident in 1980 while working as a longshoreman off-loading steel pipe from a barge onto a sea-going vessel. Sanders sought the legal services of Garrett who, in turn, involved the late James Wysocki in the case. Also named as defendants *1332 were Bonnie L. Zabotnik and the partnership of [James] Heisler and Wysocki (the "Wysocki firm"). After the tragic death of James Wysocki in a plane crash, his wife Cristina, as administratrix of Wysocki's estate, was substituted as a defendant.
Subsequently, Willie Sanders amended his petition to include Mrs. Wysocki as a defendant, individually, as well as in her capacity as administratrix of the estate of Mr. Wysocki. Thereafter, Mrs. Wysocki filed a third-party demand against Garrett and New England, claiming that Wysocki and the Wysocki firm were insureds under Garrett's malpractice insurance policy issued by New England. It is the nature of the relationship between Garrett and Wysocki, and whether or not Wysocki was an insured under Garrett's malpractice insurance policy, which form the core of this appeal.
All claims were settled prior to the day of trial, leaving for trial only Cristina Wysocki's third-party claim for insurance coverage, penalties and attorney's fees against Garrett and New England. Following trial the jury found that James Wysocki was not an insured under the terms of the policy issued by New England, and that New England did not arbitrarily, capriciously or without probable cause refuse to defend Mrs. Wysocki against the claims of Willie Sanders.
Mrs. Wysocki raises ten assignments of error on appeal.
A threshold issue is New England's assertion that its policy provides no coverage for Wysocki because it only covers claims made during the policy period and no claim was made against Wysocki until after the policy had expired. Mrs. Wysocki maintains that this argument is in the nature of an affirmative defense and therefore should have been set forth in New England's answer to her third-party demand pursuant to La.C.C.P. art. 1005. This defense was not raised at the trial court level and therefore will not be considered by this court. Uniform Rules of Louisiana Courts of Appeal, Rule 1-3.
We find the dispositive issue on appeal to be whether the jury was clearly wrong in finding that the late James Wysocki was not an insured under the New England policy. Part I of the New England policy provides coverage for an "Insured." Part II of the policy provides in pertinent part:
D"Insured," whenever used in this policy, means:
1. the Named Insured;
2. any person or professional legal corporation, not defined as a Named Insured, but who or which was, is now, or hereafter becomes an employee (as lawyer or otherwise) of, or lawyer "of counsel" to the Named Insured or Predecessor Firm(s); (Emphasis added.)
* * * * * *
5. as respects the liability of each Insured as is otherwise covered herein, the heirs, executors, administrators, assigns and legal representatives of each Insured in the event of their death, incapacity or bankruptcy.
E"Named Insured," whenever used in this policy, means the firm, and the persons and the professional legal corporations named in Item I. of the DECLARATIONS, and any lawyer or professional legal corporation who or which, during the Policy Period, is or becomes an owner, partner, officer, director or stockholder employee of the firm.
The renewal application page of the policy provided in pertinent part:
The word "applicant" for the purposes of this application means all Lawyers associated with the firm.... (Emphasis added.)
Nowhere in the policy are the terms "employee," "lawyer `of counsel'," or "Lawyers associated with the firm" defined. The policy, however, specifically provides coverage for the former two categories of persons and through the renewal application, those in the latter category.
Richard Garrett did not practice law from 1973-1981. Garrett first met with the injured longshoreman, Willie Sanders, on May 21, 1981. Garrett initially focused on the worker's compensation aspect of Sanders' case, but also considered other actions related to the case, including a possible claim for personal injuries. Garrett testified that prior to 1973 he had handled maritime personal *1333 injury cases "up to a point." In a letter dated October 27, 1982 Garrett notified a compensation carrier that he would be filing a third-party action against the owner of the barge and possibly the ship involved in Sanders' accident. However, during trial Garrett testified that he never intended to file the suit himself. He did make attempts to learn the names of the barge and ship and their owners. In May 1982 Garrett wrote the U.S. Department of Labor in an attempt to ascertain the names of the barge and ship and the names of their owners.
In March 1983 Garrett wrote James Wysocki about Sanders's case, indicating a desire to have Wysocki handle the third-party claim on a "referral basis." Garrett testified that he did not believe he had ever referred a case to James Wysocki before. In a June 1983 letter to Wysocki, Garrett asked whether Wysocki had filed the third-party action against the vessel yet. The next month, July 1983, Garrett again wrote the U.S. Department of Labor seeking the name and address of the barge owner. At trial Garrett used the term "referred" but also said that he "hired [Wysocki] to do the handling of the third party." It was stipulated by New England that Garrett "did, in fact, represent Willie Sanders at all times." Garrett alone handled Sanders' worker's compensation claim throughout the time that James Wysocki worked on Sanders third-party tort action, both of which arose out of the same accident and injury.
Garrett characterized Wysocki as his associate numerous times. In a letter from Garrett to the worker's compensation carrier, dated August 16, 1983, he states: "I have associated James Wysocki, Esq. in all claims arising out of Willie Sanders accident of 12-20-80." In an April 13, 1984 letter to Sanders, Garrett tells his client that he is "glad to have [Wysocki] as [his] associate in [Sanders'] case." But, in an August 11, 1983 letter from Wysocki to the compensation carrier, Wysocki states that the case had been "referred" to him by Garrett. Garrett also informed Sanders in the April 13, 1984 letter that he and Wysocki "keep in close touch about what is going on in your case." Garrett testified, and copies of letters introduced at trial reflect, that Wysocki sent Garrett a copy of most of the letters he sent to Sanders.
Garrett testified that it was never intended that Wysocki would be an employee of his law firm. He also said there was never an agreement that he would share in any contingency fee Wysocki received for the tort action. Garrett never went to court with Wysocki and Wysocki never showed Garrett the pleadings he filed on behalf of Sanders. Garrett admitted that besides worker's compensation cases, he had not tried a personal injury case since the late 1950's.
Garrett had two professional relationships with other attorneys which were discussed at trial. One was with Gregory Guth. On May 30, 1986 Gilsbar Inc., New England's agent, wrote to Garrett attaching three endorsements (1) adding Gregory Guth to Garrett's malpractice policy, (2) adding moonlighting coverage for Guth, and (3) excluding coverage for work by Guth for New Orleans Legal Aid. Additional premiums were assessed for the two Guth coverages. Garrett said Guth became an "employee" of his when he came to work in his office full-time. Guth was listed on Garrett's letterhead.
Compare Gilsbar's handling of Guth with Gair Oldenburg, an attorney who rented office space from Garrett at one time. Garrett also gave Oldenburg some of his personal injury cases to handle. In a September 22, 1986 letter to Gilsbar, Garrett requested that Gair Oldenburg be added to his malpractice policy. The administrator of Gilsbar replied in letter dated October 13, 1986, stating:
After the effective date of your policy it is not necessary to endorse, add or delete attorneys and/or technical employees as they are covered automatically. However, it is necessary that you notify us in writing at the time there is a change in the covered employees.
Garrett testified that he "referred" cases to Oldenburg. He also said Oldenburg was "associated" in handling some of his cases. However, he said Oldenburg was not his employee. Oldenburg maintained his own practice and, unlike Gregory Guth, used his own letterhead. Garrett interpreted the reply letter from Gilsbar as informing him that *1334 he did not have to add Oldenburg to his policy.
Mrs. Wysocki called Stephen P. Murray, an attorney, as an expert witness. Counsel for New England stipulated that Murray was an expert, though it was never specified exactly in what area his expertise lay. Murray estimated that he had handled hundreds of cases involving the interpretation of insurance policies. He said eighty percent of his work is on "association or referral from other lawyers." Murray testified that the term "associated" was a broad term intended to include all lawyers who work on the firm's business. He agreed that the association of trial counsel in a case as Garrett associated Wysocki encompassed the term "employee." He also stated that the term "of counsel" could refer to a lawyer who is working with or assisting a second lawyer in a litigated matter.
It was Murray's opinion that the term "lawyer of counsel" encompassed the relationship between Garrett and Wysocki when Garrett hired Wysocki as his associate to represent Willie Sanders. It was also Murray's opinion that the policy provisions were not ambiguous, merely broad. As broadly construed, it was Murray's opinion that the New England policy afforded malpractice coverage to James Wysocki's representation of Willie Sanders. Murray also testified that because the policy afforded such coverage, it had a duty to defend and indemnify him under the terms of the policy. Questioned about the fees charged by counsel for Mrs. Wysocki and the estate of the late James Wysocki to defend against the claims of Willie Sanders, Murray agreed that hourly rates of $200.00 and $150.00 for partners for litigation and in-office work, respectively, $150.00 and $125.00 for associates for litigation and in-office work, respectively, and $55.00 for all paralegal work, were reasonable and customary in the community.
Third-party defendant New England apparently intended to present an expert witness but that witness was out-of-town and not available when needed. Counsel for New England had not subpoenaed the witness and therefore the trial court refused to hold the case open to receive the expert's testimony. New England did not raise this issue on appeal.
This court's function in reviewing findings of fact is to determine whether the evidence was sufficient for the trier of fact to make those factual findings and, if so, whether those findings were nonetheless clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La. 1989); Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In making its finding that the New England policy did not provide coverage for Wysocki, the jury either disregarded the testimony by Stephen Murray or gave it so little weight that it effectively disregarded that evidence. A critical issue is whether the jury could have properly disregarded this uncontradicted testimony. The weight to be given an expert's testimony is largely dependent on his qualifications and facts on which he bases his opinion. Patterson v. Meyers, 583 So.2d 79 (La.App. 4th Cir.1991). While it may not be lightly disregarded, even uncontradicted expert testimony is not binding on the court. Russ v. Jones, 580 So.2d 1098 (La.App. 4th Cir.1991); Philip Werlein Ltd. v. Daniels, 538 So.2d 722 (La.App. 4th Cir.1989), writ denied, 543 So.2d 21 (La.1989).
Mrs. Wysocki had the burden of establishing by a preponderance of the evidence that James Wysocki was an insured under the terms of the policy. Stephen Murray affirmatively testified that it was his opinion as an expert witness that Wysocki was Garrett's "employee," that Wysocki was "associated" with Garrett, and that Wysocki was "of counsel" to Garrett. Murray also testified that it was his expert opinion that the New England policy provided liability coverage for James Wysocki. There was no evidence of any weight to rebut Murray's testimony. The policy itself gives absolutely no guidance as to whether, considering the relationship between Garrett and Wysocki, Wysocki was an associate, employee, or lawyer of counsel to Garrett. The lack of specific definitions of these terms in the policy is consistent with Murray's testimony that the coverage afforded by the policy was intended to be broad. The definition of an insured in *1335 this respect was either grossly ambiguous or intentionally broad.
While Garrett did pay an extra premium for coverage of Gregory Guth, Guth was listed on Garrett's letterhead. Oldenburg, whose relationship with Garrett more closely resembled the one between Garrett and Wysocki, was not listed on Garrett's letterhead and maintained his own practice, handling cases from Garrett on a referral basis. New England's agent, Gilsbar, specifically informed Garrett that he need not have notified them about Oldenburg for Oldenburg to be covered under the policy. We note that this letter from Gilsbar concerning Oldenburg came after Garrett had contacted them regarding Guth. While we do not suggest that James Wysocki was in any way thus led to believe he was covered under Garrett's policy, this is evidence bearing on the broadness of the policy coverage.
Even if Wysocki was not an "employee" under the terms of the policy, there was substantial evidence that he could have been considered an associate or a lawyer of counsel. Considering all of the evidence, we find that the jury was clearly wrong or manifestly erroneous in finding that James Wysocki was not an insured under the New England policy. Under the policy Mrs. Wysocki and the estate of James Wysocki are insureds. As insureds they were entitled to a defense by New England. New England is liable for attorneys fees and costs incurred by the late James Wysocki, Mrs. Wysocki, and the estate of James Wysocki incurred in defending the suit. It was stipulated by counsel for New England that the total amount of damages sustained by Mrs. Wysocki and the estate of James Wysocki was $301,000.00.
We now consider the second finding by the jury, that New England did not arbitrarily, capriciously or without probable cause refuse to defend Mrs. Wysocki and/or the estate of James Wysocki.
Under La.R.S. 22:658(B)(1), an insurer's refusal to defend an insured as required under the terms of a policy subjects the insurer to a penalty of ten percent of the legal fees and costs incurred by the insured in defending the suit if that refusal is arbitrary, capricious, or without probable cause. See Parks Equipment Co. v. Travelers Ins. Co., 293 F.Supp. 1206 (E.D.La.1968). This section is penal in nature and is strictly construed. The burden is on the claimant to prove arbitrariness and capriciousness or lack of probable cause. Batiste v. Pointe Coupee Constructors, Inc., 401 So.2d 1263 (La.App. 1st Cir.1981), writ denied, 409 So.2d 615 (La.1981). An insurer's obligation to defend suits against its insured is broader than its liability for damage claims. That duty to defend is determined by allegations of the injured plaintiff's petition and the insurer is obligated to provide a defense unless the allegations of fact contained in the petition clearly show that no coverage exists. Meloy v. Conoco, Inc., 504 So.2d 833 (La. 1987); Levy v. Duclaux, 324 So.2d 1 (La.App. 4th Cir.1975), writs denied, 328 So.2d 887, 328 So.2d 888 (La.1976).
Our conclusion that the jury was clearly wrong in finding that James Wysocki was not an insured under the policy is based in part on the expert testimony of Stephen Murray, and the lack of any evidence to rebut his expert opinion that James Wysocki was an insured. However, at the time demand for payment and/or a defense was made upon New England by Mrs. Wysocki, Murray's opinion was not a factor. Even considering the ambiguity of the policy insofar as it defined an insured, we are unable to say that Mrs. Wysocki met her burden of establishing that New England's denial of payment and/or a defense was arbitrary, capricious or without probable cause.
Our disposition of this appeal renders moot consideration of Mrs. Wysocki's other assignments of error.
For the foregoing reasons, we reverse the judgment of the trial court in part, affirm it in part, and recast it as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of third-party plaintiff CRISTINA L. WYSOCKI, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE SUCCESSION OF JAMES A. WYSOCKI and against third-party defendant NEW ENGLAND INSURANCE COMPANY in the amount of THREE HUNDRED *1336 AND ONE THOUSAND DOLLARS AND NO/100 ($301,000.00), plus legal interest from the date of judicial demand, and all costs at the trial and appellate levels.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of third-party defendant NEW ENGLAND INSURANCE COMPANY and against third-party plaintiff CRISTINA L. WYSOCKI, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE SUCCESSION OF JAMES A. WYSOCKI dismissing with prejudice her claims for a penalty.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of third-party defendant RICHARD GARRETT and against thirdparty plaintiff CRISTINA L. WYSOCKI, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE SUCCESSION OF JAMES A. WYSOCKI dismissing with prejudice her claims against him.
REVERSED AND RENDERED.
BARRY and JONES, JJ., concur.
SCHOTT, C.J., and WARD, J., dissent.
BARRY, Judge, concurring.
Mr. Wysocki cannot be considered an "employee" of Mr. Garrett.
I join the majority because New England's policy lacks specificity and, as such, should be interpreted in favor of coverage.
I note that in practice a "referral" does not disassociate the forwarding attorney (Garrett) from the trial attorney (Wysocki). To the contrary, it is in the best interests of both to proceed together.
SCHOTT, Chief Judge, dissenting:
The insurance policy in question is a contract between Richard J. Garrett and New England Insurance Company. The issue is whether this contract providing professional liability insurance to Garrett can be interpreted to provide coverage to James Wysocki, an attorney to whom Garrett referred a case and who allegedly committed malpractice in the handling of the case.
Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046. This is the situation in the present case.
The policy definition of "insured" includes "an employee (as lawyer or otherwise) of, or lawyer "of counsel" to the Named Insured or Predecessor Firm(s)". To interpret the policy to include Wysocki as an employee of Garrett would be absurd. Lawyer "of counsel" is a term of art well known to lawyers and judges who practice law and it cannot be reasonably interpreted to include a lawyer like Wysocki who had no professional relationship whatsoever to Garrett outside of the one case Garret referred to Wysocki to handle. The only other phrase which can arguably be interpreted to include someone like Wysocki is "Lawyers associated with the firm [Garrett]" which appears in the renewal application completed by Garrett on March 10, 1986.
Appellant argues that the application is a part of the policy and consequently the "lawyers associated" definition is included in the policy's definition of "insured". This argument overlooks the obvious intention of the parties with respect to the renewal application. The "lawyers associated" definition is in the context of an introductory paragraph of an application form which reads:
The word "applicant" for the purposes of this application means all Lawyers associated with the firm. All questions must be answered in full. The application must be signed and dated.
The form required Garrett as the applicant to provide his name and address, the current policy number and policy period, and the desired limits of liability and deductible. Question 5 of the application required Garret to provide:
Name of Owner(s), Partners, Directors, Stockholder Employees and Employed Lawyers to be insured (use separate addendum if necessary).
*1337 The form then required the applicant to provide each name of those referred to above together with his or her title, the time the lawyer was admitted to the Louisiana Bar, the lawyer's specialty and the lawyer's other bar affiliations. Clearly, this application was seeking the identity of and information about lawyers who were associated with Garrett on some sort of an ongoing basis when he was applying for renewal of his insurance. For underwriting purposes, New England needed to know how long these associates had been practicing and what, if any, specialties they pursued. It is perfectly obvious that the parties to this contract, New England and Garrett, had no intention of including in the coverage independent lawyers like Wysocki to whom Garrett might refer a case in the future. To include a lawyer like Wysocki in the phrase "Lawyers associated with the firm" as obviously intended in this application would be absurd.
I agree with Judge Ward in his dissent that the insurance policy here is clear and unambiguous and cannot be reasonably interpreted to include a lawyer like Wysocki to whom Garrett might refer a case. The interpretation by the majority leads to absurd consequences as discussed by Judge Ward. New England would find itself unwittingly insuring any and all lawyers to whom their insureds referred cases without any knowledge of the records of those lawyers, consequences New England was obviously seeking to avoid when it required named insureds to complete applications like the one Garrett completed. The majority interpretation creates a kind of "omnibus coverage" for any lawyer who handles or mishandles a client or case which belongs to a named insured and is "loaned" to another lawyer on a referral basis. Surely, such an absurd result was never intended by the parties to this contract.
The judgment of the trial court should be affirmed.
WARD, Judge, dissenting.
I respectfully dissent. I believe some of the majority errs by confusing the issue of coverage herein with automobile liability insurance. In those cases, by construing policies in favor of coverage, courts generously protect the insured, who more than likely, did not understand the limits of coverage. That is not the case here. The insured and insurer agree on the extent of the coverage. If the two parties to a contract agree on its meaning, courts should not stretch to find a different one. But most importantly, I do not believe the finding of fact by the jury was manifestly erroneous. We must accept it unless it is manifestly erroneous, even when it has unpleasant consequences as in the instant case. However, not only do I not believe the jury verdict to be manifestly erroneous, I believe it is the correct finding and the majority's finding incorrect.
As to the jury's finding of fact, the question of coverage is not always a question of law. It may be a question of fact, as I believe it to be in this case. New England's malpractice policy is clear and unambiguous. Under the policy there are two categories of those covered by the insurance: (1) the named insured and, (2) an employee of [the named insured], or lawyer of counsel to the named insured. The jury finding must be construed to mean that Mr. Wysocki was neither an "employee" nor "of counsel." The jury had the benefit of two experts, one for the plaintiff who testified that attorneys would hold Mr. Wysocki was an employee and covered, and the insured, Richard Garrett, himself an attorney and an expert, who said Wysocki was neither an "employee" nor "of counsel". Mr. Wysocki, now deceased, never claimed otherwise when defending this malpractice claim.
The majority says there is a third categorysomeone "associated with" the insured. I disagree, but even if I accept that proposition, the question of whether Garrett associated Wysocki as co-counsel was a question for the jury. Mr. Garrett testified that when he referred the case he gave full control to Mr. Wysocki, and that he would only handle the compensation claim. The jury chose to believe Mr. Garrett.
It is clear to me that the jury had the issue squarely presented and found that Mr. Wysocki was neither an "employee" nor "of counsel" nor "associated." This is a finding of fact which the majority has not demonstrated is manifestly erroneous; it should not *1338 be reversed; the majority should not substitute their finding for that of the jury. Stobart v. State through DOTD, 617 So.2d 880 (La.1993)
New England's Policy covers malpractice by the named insurer, employees of the named insured, and attorneys of counsel, Part II, Section D, 1 and 2. This definition cannot be said to include attorneys to whom the insured refers a case. An attorney who accepts a referral is not an "employee" nor "of counsel," nor is he "associated" in the case, as when one attorney associates another, such as local counsel, to aid in the trial.
There are practical reasons for holding that only employees of the insured or attorneys of counsel to the insured are covered, and if we were to stretch a point, those associated with the insured. The insured has a real interest in having his or her "employees" and attorneys "of counsel" or those he "associates as co-counsel" covered by malpractice insurance. If they are not, the insured can be vicariously liable for their negligence. This is not true when the insured attorney refers a case to another who assumes total control, as in this case. Without a showing of "negligent referral," and there is none in this case, the referring attorney is not liable for malpractice of the attorney who accepts the case. He has no need to carry malpractice insurance, nor to pay the premium the insurer would charge to cover all attorneys to whom a case may be referred. An insured attorney may refer cases to any number of attorneys, dozens or more, and a malpractice policy cannot possibly cover all attorneys to whom the insured refers cases, because, quite obviously, an insurer cannot calculate the risk nor determine the cost of insurance when the exposure is unknown.
We should not place the risk of insuring unknown attorneys on an insurer unless the insurer voluntarily accepts itand the insured pays for it. Those attorneys who accept referrals should be responsible for obtaining malpractice insuranceand paying for it. He or she should not expect a free ride on the malpractice insurance of the referring attorney.