898 So.2d 589 (2005)
Ronnie BAILEY
v.
Alfred NUNEZ and The State of Louisiana, Division of Administration, Office of Risk Management.
No. 2004-CA-1603.
Court of Appeal of Louisiana, Fourth Circuit.
March 2, 2005.
*590 Darleen M. Jacobs, Al Ambrose Sarrat, Jacobs & Sarrat, New Orleans, LA, for Plaintiff/Appellee.
Charles C. Foti, Jr., Attorney General, Susan H. Shuey, Assistant Attorney General, LA Dept. of Justice, Litigation Division, New Orleans, LA, for Defendants/Appellants.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge EDWIN A. LOMBARD and Judge LEON A. CANNIZZARO JR.).
JOAN BERNARD ARMSTRONG, Chief Judge.
The defendants-appellants, Alfred Nunez and the State of Louisiana, Division of Administration, Office of Risk Management DOTD, appeal a personal injury judgment in favor of the plaintiff-appellee, Ronnie Bailey. We affirm.
This appeal arises out of a vehicular collision between an automobile driven by the plaintiff and a State of Louisiana truck driven by Alfred Nunez, on March 8, 2000. The details of the collision are not at issue as the defendants have stipulated to liability.
At the conclusion of the trial on July 7, 2004, the judge rendered judgment orally with reasons. The judgment was reduced to writing the following day. The plaintiff was awarded $245,000.00 in general damages, $10,886.00 for past medical expenses and $20,000.00 for future medical expenses. The defendants do not challenge *591 the awards for past and future medical expenses. The defendants' sole assignment of error asserts that the award of general damages is excessive.
The review of this assignment of error first involves the fact findings of the trial court, which in this case boils down to the decision of the trial court to credit the testimony of the plaintiff and his witnesses in preference to the written medical report of the independent medical expert offered by the defendants. Once the applicable facts have been determined, the next step in the process is the determination of whether the amount awarded can be justified according to the appropriate standard of review in light of the permissible findings of fact.
The defendants basically make two arguments: The first is that this Court should credit the opinion of their expert, Dr. Lee Moss, in preference to the evidence and testimony of the plaintiff and his experts; and the defendants' second argument is that his complaints attributable to the accident were temporary minor complaints of only two years duration, and that the bulk of the plaintiff's disability should be attributed to his pre-existing emphysema and orthopedic deterioration. The trial court's fact findings and credibility calls are subject to the manifest error standard of review in general, and as to conflicting expert testimony, we note the following:
Because even uncontradicted expert testimony is not binding on the factfinder, Sanders v. Wysocki, 92-1190, p. ___ (La.App. 4th Cir.1/27/94), 631 So.2d 1330, 1334, writ denied, 94-0506 (La.4/22/94), 637 So.2d 156-57, the acceptance of one expert's opinion over that of two others does not represent an abuse of discretion.
J.A.G. v. Schmaltz, 95-2755, p. 12 (La.App.4.Cir.10/23/96); 682 So.2d 331, 337. In reviewing contrasting expert testimony, the trier of fact has the responsibility to determine which evidence is the most credible. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1111 (La.1990); Miller v. Miller, 602 So.2d 330, 332 (La.App. 4 Cir.1992).
The only two witnesses who testified live at the trial on the merits were the plaintiff and his expert/treating physician, Dr. Daniel Seltzer. The plaintiff also offered the deposition testimony of Dr. Kenneth Vogel, which was received without objection. The defendant offered the written report of the independent medical examination performed by Dr. Lee Moss[1] which was received without objection.
The plaintiff testified that he was born on September 23, 1949, and that at the time of trial he was 54 years old. At the time of trial he had been on Social Security disability for six or seven years because of his bronchitis and emphysema. He testified that at the time of the collision he was struck in the face by his car's airbag. He testified that he began experiencing neck and back pain immediately after the impact. He went once for physical therapy to Davidson and Lorusso, but he did not go back because he lacked transportation. He also had several therapy sessions at Motions Dynamics physical therapy from April 24, 2000, to May 26, 2000, but he experienced no relief from his pain. He testified that he was experiencing no back or neck problems prior to the collision. In addition to medication he would soak in a hot tub or use heat pads for pain.
He described his pain as a constant "burning," along with an occasional numbness on the right side and "throbbing" headaches. Although he admitted that he *592 was not "much on sports," prior to the accident, he enjoyed taking his grandchildren to the park and playing ball with them which he could no longer do as a result of the accident. He gave as another example the fact that as a result of the accident it was painful for him to try to change a tire on his car.
While the plaintiff's direct testimony concerning the nature and extent of his mental anguish, pain and suffering is sparse, much can be inferred from Dr. Seltzer's testimony concerning the nature and extent of the plaintiff's complaints and the treatment required to alleviate his suffering. Any reasonable fact finder could infer, as the trial court obviously did, from the frequency with which the plaintiff required medical attention and the fact that his pain was of such severity as to require muscle relaxers and narcotic pain killers, that the plaintiff experienced significant protracted pain and suffering with no prospect of material improvement anywhere in sight.
The defendants stipulated as to Dr. Seltzer's expertise in the field of orthopedic surgery. He testified that he first examined the plaintiff on April 5, 2000. He testified that the plaintiff sustained injuries to his neck and back as a result of the accident. The plaintiff was initially treated at Charity Hospital and released. However, he continued to complain of neck pain, lower back pain and pain which radiated into his left arm, left hip and left leg as well as "some mild complaints of numbness in his left arm and left leg as far distally as the thigh."
The plaintiff acknowledged pre-existing heart and lung conditions to Dr. Seltzer, but denied the existence of any prior orthopedic conditions.
Dr. Seltzer testified that the plaintiff showed moderate decreased range of motion secondary to muscle spasms on either side of his neck. Lateral bending and extension produced mild increase in his discomfort. The range of motion of the plaintiff's upper extremities was normal. His thoracic spine showed some generalized tenderness, but there was no spasm. Dr. Seltzer went on to testify that:
The lumbar spine showed moderate decreased range of motion with muscular tenderness and some spasm. As he flexed forward, there was evidence of spasmodic scoliosis. All that simply means is that as he bent forward because of the spasm in his back, his back was twisted to the side.
Lateral bending and extension produced increased discomfort of his back.
When asked what his initial opinion was, Dr. Seltzer testified that:
A. Well, at the very least I thought he had sustained soft tissue injuries of the cervical spine and lumbar spine. The x-rays that I had taken did show that he had some pre-existing degenerative change in both those areas. So the working diagnosis would have been soft tissue injuries and underlying degenerative changes.
Q. Did the x-ray also show straightening of the normal lordotic curve?
A. Yes, ma'am. That would be consistent with the spasm that he had on physical examination that was found in this man.
Dr. Seltzer initially prescribed Celebrex and Scalaxin for the pain and spasm and he directed the plaintiff to reduce his activities to a level of comfort. He also prescribed a muscle cream and out-patient physical therapy.
On April 25, 2000, Dr. Seltzer saw the plaintiff a second time. He noted that the plaintiff's condition had not changed much, he was still having neck and back pain and the medication did not seem to help much. *593 He directed the plaintiff to continue therapy in hopes that his complaints would soon resolve themselves.
Dr. Seltzer again noted no significant improvement in the plaintiff's condition when he saw him for a third time on May 9, 2000[2]. Accordingly he prescribed stronger medication. When asked if the plaintiff was disabled at the time of this visit, Dr. Seltzer responded:
He was already disabled. But what I told him was it still was necessary to reduce his activities, so he would have been restricted more than he normally would have been.
There was still no change in the plaintiff's condition when he was next seen by Dr. Seltzer on June 6, 2000. Dr. Seltzer testified that on July 10, 2000, the plaintiff's "condition was still the same," but that he "did not see any specific spasm on that visit."
An MRI performed on June 21, 2000, showed that the plaintiff had areas of "mild to moderate" disc herniation at C5-C6 in his neck, as well as some nerve impingement on the left side in the nerve roots at L5-S1 in his lower back. It was Dr. Seltzer's opinion that the herniation "was either caused by or was aggravated and made symptomatic by the accident." Dr. Seltzer testified that the herniation could cause neck and back pain as well as arm or leg pain. Dr. Seltzer testified that the nerve impingement could cause left leg pain and numbness and "was consistent with some of the findings and some of the complaints that Mr. Bailey had." Dr. Seltzer attributed the nerve impingement to the accident.
Because the plaintiff did not seem to be getting adequate relief from the prescribed medication, on August 8, 2000, Dr. Seltzer recommended that he get a second opinion from a neurosurgeon, Dr. Kenneth Vogel, to evaluate him as a possible candidate for neck or back surgery.
Dr. Seltzer later saw the plaintiff on August 29, October 30, November 20, and December 11, 2000. On none of those occasions did Dr. Seltzer note any material improvement in the plaintiff's condition. Dr. Seltzer went on to see the plaintiff on thirteen occasions during 2001. Dr. Seltzer testified that "the entire year was characterized by him having neck and back pain."
Dr. Seltzer testified that he saw the plaintiff on a monthly basis in 2002, during which time most of the plaintiff's pain was in his lower back. Dr. Seltzer testified that the plaintiff was frustrated by his lack of progress, but he was afraid of surgery because of his underlying heart disease and emphysema. Therefore, the plaintiff was very indecisive about the prospect of surgery. For the same reasons Dr. Vogel also was reluctant to pursue surgery.
Dr. Seltzer again saw the plaintiff on a monthly basis in 2003. Dr. Seltzer characterized those visits as follows:
Again, the physical findings remained about the same, more back pain than neck pain but he did have some visits where he did have neck pain. Again, this was an on going process of treating him conservatively attempting to find the combination of medications which would work for him. But he again never was able to go forth and have the surgery primarily because of his medical conditions.
Dr. Seltzer went on to testify that in 2003 he considered the plaintiff to be a *594 candidate for surgery had his general health not been so poor. As an alternative Dr. Seltzer prescribed a variety of medications over time, primarily Scalaxin as a muscle relaxant and Vicodin for pain. Dr. Seltzer recognized that Vicodin was a narcotic, but he testified that the plaintiff controlled his usage of it and it appeared to be necessary to maintain his level of comfort. Dr. Seltzer at no point during the course of treatment felt that the plaintiff was seeking treatment for the purpose of obtaining narcotic drugs. He had no doubt that the plaintiff's injuries warranted the drugs he prescribed.
Dr. Seltzer testified that he continued to see the plaintiff on a monthly basis up to the time of trial in 2004 and that he was still under his care. He testified that in 2004 the plaintiff continued to experience primarily low back pain and that his pain increased if he increased his activities. The plaintiff continued to control his pain with medication. He testified that at the time of trial the plaintiff "from the spinal point of view he has enough pathology to justify consideration for surgery," but that he was prevented from doing so because of his other health problems.
Dr. Seltzer expressed the opinion that the plaintiff:
[I]s entitled to a 10 percent whole body impairment rating on the basis of his cervical spine and he is entitled to a 15 percent whole body rating on the basis of his lumbar spine.
Dr. Seltzer explained that the two figures could not simply be added together to determine the plaintiff's aggregate whole body disability, but he estimated it to be approximately 22 percent permanent disability. As examples he explained that the plaintiff should not lift more than ten pounds and he should avoid stooping, squatting, kneeling and climbing. He should also avoid looking up for extended periods of time or moving his head rapidly from side to side. Dr. Seltzer felt that the plaintiff would require someone to manage his care in the future, whether it be he or some other doctor. The trial court specifically found that "without the surgery Mr. Bailey will continue to need the treatment monitored which is controlled by medication."
We find nothing in the record from which we might conclude that the opinions expressed by Dr. Seltzer are so internally inconsistent or are so contradicted by objective evidence as to be manifestly erroneous. We may not second guess the decision of the trial court in choosing to credit the opinion of Dr. Seltzer in preference to that of the defendants' expert, Dr. Moss, in the absence of manifest error. The defendants make no argument that Dr. Seltzer is unqualified in any way to express the opinion he expressed. The defendants allege no flaws in Dr. Seltzer's procedures or methodology.
Instead the defendants argue that we should accept Dr. Moss' opinion that the plaintiff's injuries attributable to the accident "had resolved." However, Dr. Seltzer testified to a contrary view and we cannot say that the trial court was manifestly erroneous, clearly wrong or abused its discretion in choosing to credit the opinion of Dr. Seltzer in preference to that of Dr. Moss. The defendants argue that because Dr. Moss was of the opinion that it was possible that the plaintiff's injuries existed prior to the accident that we should accept that as the most likely explanation in spite of the testimony of the plaintiff and Dr. Seltzer to the contrary. That a view of the evidence is possible that is different from the facts found by the trial court does not constitute manifest error and is not a sufficient basis for overturning the facts found by the trial court.
Finally, the defendants noted that, "Dr. Moss could find no medical explanation for *595 the symptoms in the right arm and right leg based on the records reviewed." In other words, the defendants contend that the objective findings of plaintiff's injuries warrant a finding of pain only on the left side. However, Dr. Seltzer testified that with a central disc herniation, such as that experienced by the plaintiff, it would not be unusual to experience pain on either side. The trial court specifically credited Dr. Seltzer's testimony on this point. Moreover, Dr. Seltzer testified that the plaintiff's complaints about pain on his right side were minor and infrequent in comparison with his complaints of central or left side pain. Therefore, the arguments concerning the existence and/or causation of pain on the plaintiff's right side are not a significant factor in reviewing the award of the trial court.
As we have found that the trial court chose to credit the evidence of the plaintiff and his experts; and as we have also found that there is no basis for saying that its decision to do so was manifestly erroneous/clearly wrong; therefore, we must conclude that at the time of trial plaintiff had already suffered from injuries arising out of the collision for over four years with no end in sight. This necessarily leads to the further conclusion that the following pivotal argument made in brief, based on the assumption that the plaintiff suffered for only two years and then only on his left side, will not hold up under the manifestly erroneous/clearly wrong standard of review:
The trial court awarded Mr. Bailey $245,000.00 for pain and suffering. The court did not take into consideration that Mr. Bailey's complaints, solely confined to his left side after the accident, no longer existed as of November 26, 2002. An award in this amount for two years of pain and suffering is unreasonable in light of the evidence in the record.
Thus, this argument is premised on the assumption that the plaintiff experienced only two years of suffering attributable to the accident. The defendants do not argue that the general damage award is excessive based on the findings made by the trial court, i.e., that the plaintiff's sufferings attributable to the accident had not resolved at the time of trial, over four years after the accident, and that the plaintiff will continue to suffer and require treatment indefinitely.
As we have found no error in the trial court's findings of fact and credibility calls, we now apply the standard for reviewing the general damage award based on findings of four years of pain and suffering by the time of trial with no end in sight:
In Reck [v. Stevens, 373 So.2d 498 (La.1979)], this court disapproved the appellate court's simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a *596 determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974). The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
* * * *
The awards are not obviously the result of passion or prejudice, and they bear a reasonable relationship to the elements of the proved damages. Many rational triers of fact could have decided that a lower award is more appropriate, but we cannot conclude from the entirety of the evidence in this record, viewed in the light most favorable to the prevailing party in the trial court, that a rational trier of fact could not have fixed the awards of general damages at the level set by the trial judge or that this is one of those "exceptional cases where such awards are so gross as to be contrary to right reason." Bartholomew v. CNG Producing Co., 832 F.2d 326 (5th Cir.1987). [Emphasis added.]
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-1261 (La.1993)
Analyzing the award of the trial court pursuant to the standards set forth in Youn, and considering the particular injuries and their effects under the particular circumstances on Mr. Bailey, we find no clear abuse of the "much discretion" of the trier of fact. The general damage award in the instant case is not obviously the result of passion or prejudice, and it bears a reasonable relationship to the elements of the proven damages. This is not one of those exceptional cases where the award is so gross as to be contrary to right reason.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED
NOTES
[1] He is referred to in the transcript of the testimony as "Dr. Morse."
[2] There is some inconsistency in the testimony as to whether this visit occurred on May 9 or May 6, but it is immaterial.