STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-649

TREDISE M. BENJAMIN

VERSUS

DERRICK LAMBING, ET AL.

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2010-4687-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

REVERSED.

James Edward Diaz, Jr.
John E. Ortego & Associates
4023 Ambassador Caffery, Suite 100
Lafayette, LA 70503
(337) 988-7240
Counsel for Defendants/Appellants:
State Farm Mutual Automobile Insurance Company
(as liability insurer of) and
Derrick Lambing

John T. Bennett
John T. Bennett Law Offices
P.O. Box 275
Marksville, LA 71351
(318) 253-4631
Counsel for Plaintiff/Appellee:
Tredise M. Benjamin

**Larry A. Stewart**
**Stafford, Stewart & Potter**
**P.O. Box 1711**
**Alexandria, LA 71301**
**(318) 487-4910**
**Counsel for Defendant/Appellant:**
**State Farm Mutual Automobile Insurance Company (as uninsured motorist insurer of Tredise Benjamin)**

**GREMILLION, Judge.**

Derrick Lambing, his automobile liability insurer, State Farm Mutual Automobile Insurance Company, and State Farm as the plaintiff's uninsured motorist carrier appeal the trial court's judgment in favor of Tredise Benjamin, which found Lambing 100% at fault for a motor vehicle accident that occurred on December 14, 2009, in Marksville, Louisiana. That judgment awarded Benjamin $21,926.28 plus judicial interest and all costs of court. For the reasons that follow, we reverse.

## FACTS

December 14, 2009 was a rainy day in Marksville. Shortly after 5:00 p.m., Lambing, in his 1999 Toyota pickup, was driving north on Tunica Drive. As he approached the intersection of Tunica and Acton, one corner of which is occupied by a Shell convenience store, Lambing's truck was in the inside lane. Another pickup occupied the outside lane. The intersection of Tunica and Acton is controlled by a traffic light, which Lambing testified was green for north- and south-bound Tunica drive traffic. He entered the intersection at about 35 miles per hour. Lambing testified that he noticed a vehicle appear in his path as it turned left onto Tunica from the Shell parking lot. Lambing hit his brakes but was unable to avoid hitting the car, driven by Benjamin. At the point of collision, according to Lambing, Benjamin's vehicle had not straightened up.

Benjamin testified that she was attempting to exit the Shell parking lot. She described traffic as heavy, and that cars were stopped in the south-bound lanes of Tunica Drive. Drivers waved her into traffic. According to Benjamin, she pulled into the north-bound inside lane. As she pulled into traffic, Benjamin looked back over her right shoulder and saw no vehicles approaching her from behind. She traveled about 50 feet, beyond the Shell station parking lot, before she was struck from behind by Lambing. "I felt this big bump and I got hit directly from behind."

Also according to Benjamin, by the time she had traveled this short distance she had reached a speed of between 25 and 30 miles per hour.

Lambing's girlfriend, Shawn Smith, occupied the vehicle immediately behind his. She testified that Benjamin pulled across the south-bound lanes and looked as though she would hesitate, but instead pulled directly into Lambing's way. When the two vehicles collided, the force knocked Lambing's truck to the right. Smith thought Benjamin's vehicle was going slow enough that she could have stopped before entering Lambing's lane.

Lambing testified that he stopped his vehicle and exited it. He approached Benjamin and asked how she was doing. He testified that Benjamin told him, "It ain't my fault. They was waving me through." He also testified that she stated that she knew he could not have seen her. Benjamin, on the other hand, testified that she remained in her vehicle after the collision. Lambing approached her and apologized to her, claiming that he simply did not see her.

Officer Trent Young of the Marksville Police Department testified as the investigating officer. When he arrived, he noted the positions of the vehicles, both fully within the inside, north-bound lane. Officer Young took photographs of the scene and the damage to the vehicles. He testified that Lambing stated that he had stopped at the red light and after it turned green he proceeded north when Benjamin pulled out in front of him. Lambing admitted hitting Benjamin from behind. Officer Young noted damage to the rear of Benjamin's vehicle from the center point to the right rear corner. Officer Young testified that there was damage to the center rear of Benjamin's vehicle because Benjamin was unable to open the trunk to retrieve a child safety seat. The damage to the front of Lambing's truck extended from the center to the front left corner, based upon the fact that the bumper sagged slightly from the left corner toward the middle.

2

The photos taken by Officer Young were introduced at trial. Two depict the final positions of the vehicles after impact. Two depict the damage to Benjamin's car and place the impact at the extreme right rear corner of the bumper and left rear fender. We further note that, while Officer Young indicated that there was damage to the center rear of Benjamin's vehicle because she was unable to open her trunk, the trunk lid is quite definitely buckled from the side. There is no damage to the center rear of Benjamin's car. The damage to Lambing's truck is confined to the corner turning signal and left front fender  The bumper sags only at the left front corner.  The photographs quite vividly contradict Officer Young's testimony. Officer Young admitted that he had indicated on his accident report that there was damage to the rear driver's side of Benjamin's car, while there in fact was none.

In addition to the two radically contrasting accounts of the actual collision, there was a disagreement over whether Lambing had a passenger in his truck. Benjamin testified that as she sat in her car, she glanced in her rearview mirror and saw a woman and a boy in the truck.  Lambing testified that he was being followed by his girlfriend, Ms. Smith, who had her son, Michael, with her.  Officer Young testified that Lambing told him Michael was a passenger in the truck.  Lambing denied this.

The trial court also heard the testimony of Vernon Tekel, Jr., a traffic engineer and accident reconstruction expert.  Initially, Tekel had been provided with the following assumptions:  that Lambing had stopped at the traffic signal at Tunica and Acton, and proceeded through after the light turned green; that Benjamin had entered the Shell station parking lot at its northern-most point; that she had exited at the sourthern-most exit after being allowed into traffic by vehicles in the south-bound lanes; and, that the collision had occurred at a point on Tunica Drive no further than the property line of the Shell station.  The testimony he heard at trial differed in several respects.  First, Lambing testified at trial that

3

the light was green and he was traveling at 35 miles per hour. Benjamin and Officer Young testified that the point of impact was beyond the area of the Shell station lot, whereas Officer Young's report indicated that the impact occurred between the southern and northern exits of the station.

Tekel opined that if Benjamin had indeed pulled out from the southern exit and traveled to the edge of the Shell station lot, assuming she had not accelerated excessively, when she entered the north-bound lane Lambing would have been 500 feet away. He found this scenario curious based upon the property damage depicted in the photographs, which depicted damage only to the right rear corner of Benjamin's car and only the left front corner of Lambing's truck. For this to happen, assuming Benjamin was completely within the inside north-bound lane, Lambing would have had to encroach into the outside north-bound lane. But, had the impact occurred closer to the southern exit of the lot, Lambing would have been in the intersection as Benjamin pulled out. Under that scenario, the accident more probably than not occurred as Benjamin was still executing her turn. Lambing would not have had a reasonable opportunity to avoid the collision. The final resting points of the vehicles wholly within the inside lane of Tunica Drive, coupled with the points of impact on the vehicles, were more consistent with Lambing's account of the accident than Benjamin's.

The trial court rendered oral reasons for judgment. The trial court found Benjamin's testimony consistent with what she related to emergency room personnel, and therefore credible. It reasoned that Smith's testimony was not credible because she testified in too great detail about what she saw. The trial court accepted Officer Young's testimony about the damage that he saw to the vehicle, which indicated to the trial court that the accident was more probably than not a simply rear impact instead of a corner-to-corner impact. The trial court found

4

that Benjamin had established control of the north-bound lane. Ten percent fault was allocated to Benjamin and 90 percent to Lambing.

## ASSIGNMENTS OF ERROR

Lambing and State Farm, as his liability insurer, assign as error the trial's allocation of fault and its application of the doctrine of preemption. State Farm, as Benjamin's uninsured motorist carrier, asserts that the trial court's judgment should be reviewed de novo and that the trial court's finding of fault on Lambing was erroneous in the face of the physical evidence and the uncontradicted expert testimony of Tekel.

## ANALYSIS

A trial court's findings or allocation of fault are reviewed under the manifest error standard. For a full discussion of the manifest error standard, see *Stobart v. State through Dep't of Transp. & Dev.,* 617 So.2d 880 (La.1993). Unless we find that the record contains no reasonable support for the trial court's findings, we are required to affirm. *Id.*

The physical evidence in the form of the photographs was afforded almost no weight by the trial court. As Tekel testified, the only way this accident could have occurred, assuming Benjamin had gained control of the inside lane of traffic, was for Lambing to have crossed from the outside lane to the inside, given the points of impact. Courts of appeal bear a constitutional obligation to review facts and law of decisions below. La.Const. art. V, §10(B). As we have previously stated, "[I]t is our duty to reverse a decision of the trial judge if we find manifest error. Such judgment of the trial court should be reversed when it is against the clear weight and physical evidence." *Webb v. Southern Pacific R. Co.*, 617 So.2d 618 (La.App. 3 Cir.), *writ denied*, 625 So.2d 180 (1993).

Further, the trial court afforded no weight to Tekel's testimony, which was uncontradicted. Absent circumstances in the record that cast suspicion on the

5

reliability of testimony and an expression of sound reasons for rejecting it, uncontradicted testimony should be taken as true to establish a fact for which it is offered. *Jackson v. Capitol City Health Ctr.*, 04-2671 (La.App. 1 Cir. 12/22/05), 928 So.2d 129. And although even uncontradicted expert testimony is not binding on the trial court, it may not be lightly disregarded. *Sanders v. Wysocki*, 92-1190 (La.App. 4 Cir. 1/27/94), 631 So.2d 1330, *writ denied*, 94-0506 (La. 4/22/94), 637 So.2d 156; *Godfrey v. City of Baton Rouge*, 10-2333 (La.App. 1 Cir. 6/10/11) (unreported).

## CONCLUSION

We find manifest error in the trial court's factual findings. The trial court disregarded the physical evidence and ignored uncontradicted expert testimony that demonstrated that Lambing's version of the accident was the only credible and creditable version. The judgment of the trial court is reversed. All costs of the appeal are taxed to plaintiff/appellee, Tredise Benjamin.

**REVERSED.**